The Court took time to consider of their Judgment, which was the next day delivered by the Chief Justice.
M'Kean, Chief Justice.
This cause comes before us upon an appeal from the Register of Wills, and two Justices of the Court of Common Pleas of the county of Montgomery; and, it is agreed, that there is but one question for the determination of the Court; to wit, whether a Will not written by the Testator, or subscribed by him, but put into writing by his direction, and proved to be so only by the person who drew it, ought to be established as a good and perfect Will and Testament?
The disposition of property by Will, was certainly the first: mode of conveyance used among men; and some authors, in tracing its antiquity, have informed us, that Noah made a Will, devising the whole world to his sons, according to their respective proportions. The conveniency of the thing having rendered it universal, custom, at length, became a law for its support; and different solemnities, or forms, were prescribed by different Legislatures, in order to fix the authenticity of a testamentary writing. Thus, by the Roman law, it was originally requisite that a Will should be in writing, subscribed by the Testator, if he could write, before seven witnesses, *287 and, if, he could not write, then published by him in the presence of eight witnesses; but this number was properly reduced to two in the time of Justinian. By the civil and ecclesiastical laws, as they prevail in England, the ablest writers concur in saying, that two witnesses are required, and that two are sufficient to prove a Will. The statute of 32. H. 8. c. 1. (which is merely explained by the 34. and 35. of the same reign) enables a man by his Will in writing to dispose of all his soccage lands, and two thirds of his lands held in capite; which, by the subsequent operation of the 12. Car. 2. c. 24. extends to all his real estate. It is incontrovertibly settled, however, that neither the statute of Henry 8. nor the statutes by which it is explained, made any alteration in respect to Testaments of goods and chattels; and therefore, they are still regulated, as they always were, by the civil and ecclesiastical law, which, as it has been already remarked, requires the attestation of two witnesses.
As this, then, was the established rule in England, and as by the Charter from Charles the Second to William Penn, the laws of England relating to property, were to be the laws of the Province, until altered by the Legislature of Pennsylvania, we must now enquire, whether any act of our Legislature has substituted another mode of proof?
It is contended, on the part of the Appellees, that the law, enacted in the year 1705, has placed Wills of real estate, and Testaments of personal property, upon the same footing; and that any proof which would be sufficient to convince a Jury of a fact in issue, is, by that law, made competent to the probate of a laid Will and Testament. It has been argued, likewise, by the same counsel, that, even in England, from the passing of the statute of 32 Hen. 8. c. 1. ’till the passing of the statute of frauds, 29. Car. 2. c. 3. the positive testimony of witnesses was not required, but that any common law evidence, founded upon circumstances, was sufficient to prove a Will of lands. On this point, there is, perhaps, no express adjudication to be met with in our books; yet there are cases in which the necessity of two witnesses to a Will of lands, seems strongly to be implied. God. Orph. Leg. 15. Dy. 72. Plow. 345. But the cause before the Court must finally depend upon a proper construction of the act of Assembly; which has declared, that “Wills &c. being proved “by two or more credible witnesses, on their solemn affirmation, “or by other legal proof, shall be good and available in law;" and as all testamentary writings, whether for the disposal of real, or personal, estate, are subject, in this respect, to one rule, the whole dispute rests upon the words, or other legal proof.
In the construction of statutes, the same principle should be observed, which prevails with respect to Wills; and the intent and meaning of the Legislature in the former, ought to be as carefully sought after, and as faithfully pursued, as the intent and meaning of the Testator in the latter. What then was the intention of the Assembly in passing this act? The Appellees alledge, that it was to admit common law evidence in the case of Wills; and that other *288 legal proof, is an alternative opposed to the number of witnesses, But to this, it has been answered, that less proof than two witnesses, could not, consistently with the reason and nature of the subject, be intended; and that other legal proof, is put in opposition to solemn affirmation, in order to admit the attestation of an oath,-whether administered upon the Gospels to a Christian, or upon the Pentateuch to a Jew; whether with the solemnity of an uplifted hand, according to some sectaries; or with the ceremonial of the hand placed beneath the thigh, as it is practised by the Gentoo nations.
This appears, upon the whole, to be the genuine exposition of the act; and the adverse doctrine is pregnant with so much absurdity and inconveniency, that it ought not to be imputed to the Legislature, nor ought it to receive the sanction of the Court. Besides, we find, that this very act requires the testimony of two, or more, witnesses to the probate of a nuncupative Will, and likewise, to the revocation of a Will; and every principle which could make it necessary in those instances, must, a fortiori, operate in the case before us: For, it could not be designed, that greater solemnity should be observed in a verbal Testament, or in repealing, than in making, a last Will and Testament;-an act of the most serious and important nature, not only as it affects the Testator, but as it affects the peace and welfare of posterity.
In short, from the uniform tenor of the Acts of Assembly, from the practice of the Courts, and from the other analogous sections of the same law, it is evident that the Legislature meant to require two witnesses, in proof of every testamentary writing, whether for the disposition of real, or personal estate. This opinion, in which the Court unanimously concur, we are happy to deliver; for, it would be dangerous indeed, were the idea tolerated for a moment, that a notary, or any individual, could alone, according to the opposite construction, prove the validity of the Will which he had written. By such means the very purpose of Wills might be defeated, and the fullest: scope given to soul and fraudulent impositions.
Bryan, Justice.
The witness, on the present occasion, is indubitably a man of fair and upright character; and, therefore, it is the more particularly to be observed, that the opinion of the Court is founded upon the indispensible necessity of having two witnesses to the probate of every Will.
By the Court: Let the sentence and proceedings of the Register’s Court be reversed.