WILLIAM R. BASKIN, appellant, *vs.* STEPHEN BASKIN and others, respondents.

Where all the requisites to the due execution of a will are fully complied with and proved, so far as relates to *one* of the attending witnesses, and as to the *other,* it is proved that although he did not see the testator sign the will, it having been signed before he came into the room, yet that he signed the same as a witness, at the testator's request, and heard him declare at the time that it was *his last will and testament,* this is sufficient proof of the execution of the will to admit the same to probate, though the testator does not state to the witness that he has signed the will.

THIS is an appeal from the sentence or decree of the Surrogate of Yates county, refusing to admit to probate a paper writing propounded as the last will and testament of William Baskin, deceased. The deceased died the 7th day of January, 1866, at the age of eighty-nine years, and the will bore date the 1st day of December, 1865. The two subscribing witnesses were the only witnesses examined for the purpose of sustaining the will, and they testified substantially as follows: Henry Smith, one of the witnesses, and the writer of the will, says, "I saw the deceased subscribe his name to this instrument at the time he declared it to be his last will and testament; at the same time I signed my name as a witness in his presence, and at his request." On a cross-examination he testified, that "*No one was present when he*

*subscribed the will but myself.*" " After the deceased signed the will, and after I had signed my name to it, Mr. Wilsey was called in. I then took up the paper and handed it to him and said, " do you publish this to be your last will and testament ? Said he did acknowledge that to be his last will and testament. I do not recollect as he said anything more at that time, only that he said to Mr. Wilsey that he wanted him to sign his will as a witness." Mr. Wilsey, the other subscribing witness, testified as follows : " I knew William Baskin, deceased, in his lifetime. The instrument now shown to me purports to be his last will and testament. It was dated the 1st day of December, 1865. I am a subscrib- ing witness to this instrument ; I was called in to sign this will. After it was written I was called in the room. The deceased said to me he wanted me to sign this will, and the will was presented to William Baskin, deceased, and he took it into his hands, and was asked if that was his last will and testament ? And he said, this is my last will and testament. I then signed it. I signed it in the same room. *It had been signed before I came into the room.* He did not state to *me that he had signed it.* Mr. Smith's name was to it when I was called into the room." On a cross-examination the witness Wilsey further testified : " William R. Baskin said his father wanted I should witness a will. After the will was written, I think, Mr. Smith called William R. Baskin to the door, and then William said they wanted I should go in there. After I went in I asked deceased how he was getting along ? He told me. He said he wanted me to sign this paper or will. At this time I had not seen the paper. The paper was then handed the deceased, and he then said what I said on my direct examination. *He did not say anything about that being his signature. I did not see him sign it.*" Several witnesses were examined on the part of the contest- ants, as to the competency of the testator to make a will.

The surrogate after hearing the proof and allegations of the respective parties, made a decree on the 12th day of June,

1866, refusing probate of the will, in which the surrogate adjudges and decrees, that the instrument in writing was not executed and attested in the manner prescribed by law for the execution and attestation of last wills and testaments, and that said instrument was null and void as or for the last will and testament of William Baskin. From which decree William R. Baskin, one of the parties named as executor in said writing, appealed to this court.

The principal question presented by the appeal was whether the will was properly attested ; or in other words, whether the proof shows that it was signed by the testator in the presence of *each* of the attesting witnesses or acknowledged by the deceased to have been signed by him, to each of the witnesses.

*S. H. Welles,* for the appellant. I. Was the will executed according to law ? It is claimed by the respondents that the second subdivision of section 35, page 144, vol. 3, 5th edition of the Revised Statutes, has not been complied with

I shall, in the first place, notice the cases relied on by the respondents, and compare them with the case at bar. The first is *Chaffee et al.* v. *The Baptist Missionary Convention,* (10 *Paige,* 85.) In this case, the subscribing witnesses testified that when they went into the decedent's room, she took the instrument; which then had her name to it, out of her drawer, and, putting her finger on her name, said : " I acknowledge this to be my last will and testament. She did not admit, in the presence of *either* of the witnesses, that she had subscribed her name to the will, or that any one else had done so by her authority, and upon this evidence the Chancellor held the will not duly executed. In this case, there was *no evidence* of the signing. In the case at bar, one of the witnesses, Smith, testifies to every thing required by the statute, and from his evidence it appears that all the requirements of the statute were fully complied with. The next case relied on by the respondents, is *Lewis* v. *Lewis,* (1 *Kern.*

Baskin *v.* Baskin.

220.) That case differs very materially from the one at bar. In that case, the witnesses did not even see the signature, but the paper was so folded as to conceal it, and the witnesses signed their names to a paper without either of them seeing the signature, or even knowing that there was any there.

The next case is *Rutherford* v. *Rutherford*, (1 *Denio*, 33.) In that case neither of the witnesses saw the decedent execute the will. I have not been able to find a case in which the probate has been denied where the facts were like those in the case at bar. In all those cases, it appears that *neither* witness saw the execution, and there was no evidence of the signing.

II. It is claimed that the will in the case at bar was substantially executed according to law.

The requisition of our statute, that the testator should declare the instrument to be his last will and testament, as a distinct formality, does not destroy the effect of such a declaration as an independent fact to establish, with other circumstances, a compliance with any other formality required by the statute, and such a declaration made in regard to a will *actually subscribed* by the testator, and accompanied by circumstances which show a knowledge on his part of the requisites of the law, and an intention to comply with them, is a sufficient acknowledgment within the statute, that such subscription was made by him.

The only point to be examined in this case is, whether the decedent acknowledged the signature to have been made by him to the witness Wilsey. It is said by the respondents that each of the four requirements of the statute are separate and independent acts to be done, and must each be performed separately and independently of the other. The case of *Coffin* v. *Coffin*, (23 *N. Y. Rep.* 9,) has settled a different doctrine. In that case, the publication of the will and the request to sign it as witnesses were both included in one answer of the testator, and the objection was taken that the will was not properly executed, because these two things were not done

as separate and independent acts, but the court overruled the objection. The court, in its opinion, says : " All that the statute requires is, that the act of publication and the act of requesting the witnesses to sign, shall both be performed. These acts are distinct in their nature or quality, but their performance may be joined or connected. If a testator should say to a witness, ' I desire you to attest this instrument as my last will and testament,' the language would import, not only a request, but a clear publication of a will."

The testimony in this case shows a substantial compliance with the statute as an acknowledgment of the signature to the witness Wilsey.

It is not necessary that the testator should say, in so many words, " that is my signature," or, " I wrote my name there," or, "I acknowledge that I signed my name there," but a production of the will, with the name of the testator signed to it, and a request to the witness to sign it as a witness, is a sufficient acknowledgment of the signature, and more especially where as in the case before the court, the actual signing had been proved by one of the subscribing witnesses.

The case of *Jauncey* v. *Thorne*, (2 *Barb. Ch. R.* 40,) contains a collection of a large number of authorities upon the question of what is a sufficient acknowledgment. But it is said by the respondents that that case was an adjudication upon a will, executed under the act of March 5th, 1813, concerning wills. True, but the court discuss what is an acknowledgment of a signature, and if those cases are good law, then in the case before the court there was a sufficient acknowledgment of the signature to the witness Wilsey.

Upon this point, I refer to the 5th New York Surrogate's Reports, 344, and to *Peck vs. Cary*, (27 *N. Y. Rep. p.* 9,) and especially to that part of the opinion commencing on page 29. (*See also Orser* v. *Orser*, 24 *New York Rep.* 51.)

III. This will should be upheld unless there is a total want of compliance with some absolute requirements of the statute, because the disposition of the property of the testator is pre-

cisely in accordance with the divisions he had been making from time to time for three years previous to executing the same, that is, two parts to each son to one part to each daughter. It therefore is clear that the will is as the testator intended, and his intentions should not be frustrated, if possible to uphold them.

*D. B. Prosser,* for the respondent. I. The proponents fail to prove that the will was signed in the presence of *each* of the attesting witnesses, or that the testator acknowledged that he had signed the same, to each of the witnesses, as required by the 2d subdivision of the 40th section, 2 R. S. 63, and the decree of the surrogate in rejecting the will should be affirmed, because the 40th section, 2 R. S. 63, requires four things to be done in order to the due execution of a will. 1st. That the will should be subscribed by the testator at the end of the will. 2. Such subscription shall be made by the testator in the presence of each of the attesting witnesses ; or shall be acknowledged by him to have been so made to each of the attesting witnesses. 3d. The testator, at the time of making such subscription, or at the time of the acknowledging of the same, shall declare the instrument to be his last will and testament. 4th. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will at the request of the testator.

Each of these four requirements are independent acts to be done and performed, in order to a valid execution of a will, and the omission of either is fatal. (*Remsen* v. *Brincker-hoff,* 26 *Wend.* 331. *Chaffee* v. *The Baptist Missionary Society,* 10 *Paige,* 85. *Rutherford* v. *Rutherford,* 1 *Denio,* 33. *Lewis* v. *Lewis,* 13 *Barb.* 17–24. *S. C.* 1 *Kern.* 220; *Butler* v. *Benson,* 1 *Barb.* 535.)

In this case the evidence is clear that but one witness was present at the time of the subscribing of the instrument by the testator. It was signed and witnessed by Smith before the other witness was called into the room or saw the instru-

ment. But one of the witnesses had any knowledge of the signing by the testator. The witness Wilsey testified, "That he did not see testator sign the instrument, and that he said nothing to him about the signature." It is quite evident from this that the witness did not understand the testator as alluding to the signature, when he declared the instrument to be his last will and testament. What the witness understood from this declaration, was simply that the instrument was his will, and not that it had been signed by the testator. All that was said and done by the testator in the presence of the witness Wilsey, was necessary to be said and done in order to comply 'with the third subdivision of section 40, which requires the testator at the time of subscription or at the time of acknowledging it, to declare the same to be his last will and testament. The statute requires the subscription or the acknowledgment thereof to be made at the time of publication. To allow what the statute requires to be done in addition to an acknowledgment of the signature, to have the force and effect of such acknowledgment, would in effect be doing away with the 2d subdivision, which requires the acknowledgment to be made. The acknowledgment of the signature and publication are two separate and distinct acts which the statute requires to be done, in order to a valid execution of a will. The performance of one cannot be deemed as a performance of both. The statute evidently intended that there should be two witnesses to the signature or acknowledgment thereof, as well as to the publication, and that each witness should be able to prove the signature. Here we have but one witness who says anything in relation to the signature. The witness Wilsey does not even testify that he was acquainted with the handwriting of the deceased, or that the signature was in the handwriting of the deceased.

In *Remsen* v. *Brinckerhoff*, (26 *Wend.* 331,) before cited, it was held that the acknowledgment of the signature was not a publication within the meaning of the statute. It is difficult to see if the acknowledgment of the signature was

Baskin v. Baskin.

not a publication, why the publication should be regarded as an acknowledgment of the signature, when each of the acts are required to be performed as independent acts.

In *Peck* v. *Cary*, (27 *N. Y. Rep.* 9,) and several other cases of the same class, the court has found, notwithstanding the witnesses failed to recollect that all the requirements of the statute had been complied with, that the will has been properly attested, yet in no case has the court intimated that any one of the four requirements of the statutes could be dispensed with. On the contrary, the court has found from the attestation clause, and the other facts and circumstances, that all the requirements of the statute had been complied with.

In the case now before the court, there is no ground for presuming that the testator acknowledged the signature to the witness Wilsey. He fully negatives any thing of the kind, nor can any presumption arise from the lapse of time, and want of recollection on the part of the witness, as the will was written the 1st day of December, 1865. The witness was examined the 5th day of March, 1866, a period of a little over three months only having elapsed.

The surrogate has found as a fact, from all the evidence and circumstances of the case as they appeared before him, that the testator did not acknowledge to the witness Wilsey, that he had signed the paper, or that his name was signed thereto by his direction. It was peculiarly within the province of the surrogate to determine what was intended by the publication in the manner detailed by the witness, and his decision should not be disturbed, unless manifestly erroneous. (*Lewis* v. *Lewis*, 1 *Kern.* 223, &c.)

*By the Court*, E. DARWIN SMITH, J. The refusal of the learned surrogate, as appears from his careful and able opinion submitted to us, to admit the will in this case to probate, was put by him upon the single ground that it was not signed by the testator in the presence of each of the attesting witnesses, or acknowledged by him to have been so signed to

each of such attesting witnesses. Confessedly all the other requisites to the due execution of a will prescribed by the statute were fully complied with, and all such requisites were fully complied with and proved so far as respects the due execution and publication of the will in the presence of *one* of the attesting witnesses. The witness, Henry Smith, testified that he drew the will, saw it signed by the testator, heard him declare it to be his last will and testament, and signed it as a witness at his request. The other witness, Wilsey, did not see the will signed by the testator, but signed the same as a witness at his request and heard him declare that it was his last will and testament at the time. This witness also testified that the will had been signed by the testator before he came into the room, and that the testator did not state to him that he had signed it. This witness not having seen the testator subscribe the will, it was essential to its due execution that the subscription thereto by him should have been acknowledged by him to have been so made to such witness. The witness testifying that no such acknowledgment was in terms made to him, the learned surrogate held that the will was not duly proved and this provision of the statute had not been complied with, in respect to its execution. The execution of a will is to be proved like any other fact, and a will may be established upon the testimony of one of the subscribing witnesses against the testimony of the others, and also against the testimony of both of the subscribing witnesses. (*Trustees of the Auburn Seminary* v. *Calhoun*, 25 *N. Y. Rep.* 425, and *see opinion of Denio in Tarrant* v. *Ware, note to case. Orser* v. *Orser*, 24 *id.* 54. *Peck* v. *Cary*, 27 *id.* 9.) In most of the cases where this question has arisen there has been a conflict in the testimony of the attesting witnesses, or a failure of recollection on the part of one of them in respect to what occurred at the time of the execution, and the same was established upon the weight of the evidence corroborating and sustaining the witness testifying to the execution of the will. In this

case there is no such conflict. The witnesses were not together when the testator signed the will, and did not sign the same as witnesses at the same time or in the presence of each other. They were however both present in the room with the testator when the witness Wilsey signed the will as an attesting witness as stated by him, and both testify in respect to what then took place, and there is not any particular discrepancy in their testimony. They both say that the testator took the will into his hands and said it was his last will and testament and requested the witness Wilsey to sign it as a witness. The will has not the usual attestation clause written under or at the foot of it reciting the particulars required by the statute to authorize the making of a will. It has the simple attestation following: "signed and published in the presence of." It is then signed by the witnesses, immediately under the name of the testator, so that both the witnesses must have seen the name of the testator when they signed it. The names of the witnesses are written in close proximity and relation to that of the testator, nearly as much so as though they were executing the same instrument as the co-obligors to a bond, or contracting parties to any other instrument in writing. It was therefore virtually impossible for the witnesses to have signed their own names to this will without seeing that it was in fact, or purported to be, signed also by the testator, or by his name. If it were necessary to find, as a matter of fact, that the testator in express terms declared that his name thus signed to this will was so signed by him, or that on calling the attention of the witness to such name so written at the foot of the will, he should say in express terms, "this is my signature," then I think the decision of the surrogate would be correct and that he properly refused to admit the will to probate. But I think it quite clear that such is not the rule, and that such formality is not required. A will is now to be established or rejected in view of all the facts attending its exe-

cution, and an actual or implied acknowledgment is held in repeated cases to be sufficient. In *Jauncey* v. *Thorne*, (2 *Barb. Ch.* 59,) Chancellor Walworth said, on this point: " the production of the will with his name subscribed to it and in such a way that the signature could be seen by the attesting witnesses, and the request of the testator that they should witness the execution of the instrument by him as his last will, would of itself be a sufficient acknowledgment of his signature to render the will valid." That is this case exactly. It could not be described in more appropriate language. The Chancellor cites in support of this construction of the statute quite a number of cases. In *Illiot* v. *Geage*, (3 *Curteis' Eccl. Rep.* 160,) the learned judge, Sir Herbert Jenner Fust, said : " The production of a will by a testator, it having his name upon it and a request to a witness to attest it, would be a sufficient acknowledgment under the present statute. (*See also* 2 *Hagg*, 282 ; *Hall* v. *Hall*, 17 *Pick.* 373 ; *Cockrane's will,* 3 *Bibb.* 494 ; 2 *Curties' E. L.* 415 ; *Gaze* v. *Gaze*, 3 *id.* 451 ; *Keigwin* v. *Keigwin, Id.* 607 ; *Blake* v. *Creight, Id.* 547.) An acknowledgment of the testator's signature in this case I think was clearly involved in his presentation of the will to the witness Wilsey signed by him, and asking him to sign it as a witness immediately under his own name, as much so as if it had been a promissory note and he had asked the witness to sign it as surety or a co-maker. Such request would have implied a declaration that the note was signed by him, or a recognition of the signature thereto as his genuine signature. This must be a sufficient acknowledgment. To require more is to strain the strict letter of the law to the destruction of its spirit and intent, and would be to substitute form for substance. This would be in conflict with the current of the later decisions in this state, in the Court of Appeals and in this court. (*Lewis* v. *Lewis*, 10 *N. Y. Rep.* 224. *Coffin* v. *Coffin*, 23 *id.* 9.) The learned surrogate erred, I think, in refusing to admit the will to probate, and his order declaring that the said will was

---

---

not executed and attested in the manner prescribed by law for the execution and attestation of last wills and testaments, should be reversed and the will ordered to probate, with costs to be paid by the estate.

Order of surrogate reversed. (*a*)

[MONROE GENERAL TERM, December 3, 1866.  *Welles, E. D. Smith* and *Johnson.* Justices.]

(*a*) The above judgment was affirmed by the Court of Appeals, June, 1867.