Dwight, J.
The only requirement of the statute which the appellants contend was not complied with in the execution and attestation of this will is that of the acknowledgment of the subscription of the testatrix to both of the attesting witnesses. 2 Rev. St. p. 63, § 40. The will was subscribed by the testatrix in the presence of one of the attesting witnesses, was declared by the testatrix in presence of both witnesses to be her last will and testament, and the two witnesses subscribed it as such, at her request. We think the case is fairly within the authority of the decision in Re Higgins, 94 N. Y. 554. In that case the will was executed in the presence of neither of the witnesses, but was exhibited to both for their attestation. One of them, Stoker, testified that the signature of the testator was specifically acknowledged to both; the other, Jones, that the acknowledgment was of the instrument as the testator’s last will and testament. The court, after remarking upon the effect of Stoker’s testimony, said: “Aside from what has been already remarked, we think that the testimony of Jones, who swore positively that the testator acknowledged the will to be his last will and testament, was an acknowledgment of his signature, and sufficient, with the other evidence given by him, to establish a due execution of the will. The signature was plainly visible upon the instrument itself; and the testator having requested Jones and Stoker to subscribe their names to it as witnesses, and he having acknowledged the same to be his last will and testament, the statute was fully complied with in this respect, within, the decisions of this court. ” To the same effect was the much earlier case of Baskin v. Baskin, 36 N. Y. 416, which was curiously like this case in the details of its facts; and the same *299 doctrine has been applied in several subsequent cases. See In re Phillips, 98 N. Y. 267; In re Austin, 45 Hun, 1; In re Trenor, 4 N. Y. Supp.'466. In the Case of Higgins, supra, it will be observed the court refer to the fact, as important, that the signature was plainly visible to the attesting witnesses on the face of the will; and such was the fact here. It was directly over, and less than one inch removed from, that of Mrs. Clarke, the second witness. The referee finds that Mrs. Clarke saw the signature of the testatrix. Mrs. Clarke says she did not. She had left her glasses at home, and, for the purpose of signing her name, she borrowed the glasses of the other witness, Dr. Chase: She says: “I could not see very well with the doctor’s glasses, and did not see the signature to the will when I signed it,—did not see it with those glasses. ” And yet she saw sufficiently well to write her own name, in unusually small characters, and very carefully on the line which was pointed out for her signature. The doctor’s glasses, therefore, if not precisely fitted to her eyes, did not have the effect to intercept her sight, and the signature of the testatrix was within the field of her vision. As a proposition in optics, then, it may be said that she saw the signature. To see is to receive a visual impression of an object upon the retina of the eye. That impression must have been made upon the eye of the witness; because there was the object and the eye and the rays of light passing, unobstructed, from the one to the other. That impression may not have been recognized by the consciousness, or it may not have been retained in the memory, but the signature was seen in the sense of having been exhibited to the sight of the witness; and this seems to be all that the statute requires to be done in connection with the acknowledgment of the signature by the testator. It is to be observed that the first three subdivisions of the statute prescribe certain formalities to be observed by the person executing the will, and make no requirement of the witnesses. These formalities are (1) a subscription by the testator; (2) made or acknowledged in presence of witnesses; (3) a declaration that the instrument is his last will and testament. It would seem, on principle,—and we think the authorities cited support the proposition,—that, these formalities being observed, the valid execution of the will does not depend upon the correctness of vision, or the degree of attention of the witness, any more than upon the retentiveness of his memory.
It is urged that this case is distinguished from those cited by the fact that in each of the latter there was an attestation clause, and here there was none. But the statute does not mention or require an attestation clause. The use of such an appendage to a will has grown up as a convenient means of refreshing the memory of the attesting witnesses in respect to the formalities actually observed in the execution and publication of the will to which it is attached. We know of no authority for the position that such a memorandum of itself furnishes any evidence of the facts; and, if it creates any presumption in aid of the testimony of the witnesses, the cases cited do not rest upon the effect of any such evidence or presumption. The case of Will of Mackey, 110 N. Y. 611,18 N. E. Rep. 433, relied upon by the appellants, is distinguished from this in the precise respect here disclosed, viz., by the fact that in that case the signature of the testator was never exhibited to the witnesses, but (if it existed at that time) was concealed from their view; and the court say in that case: “There would have been a formal execution of the will, in compliance with the statute, if the witnesses had at the time seen the signature of the testator to the will;” although in that case, as in this, there was no specific acknowledgment of the signature by the testator, but only that the paper was his will. So in the case of In re Gunstan, Blake v. Blake, L. R. 7 Prob. Div. 102, the present master of the rolls said: “When the signature is there, and they [the witnesses] see, or have the opportunity of seeing, it, then, if the testator says, ‘ This is my will,’ or words to that effect, that is sufficient acknowledgment, although he does not say, < This is my sig *300 nature.”’ We think the surrogate was right, under the authorities, in holding that the evidence established a valid execution of the will in question.
The only question remaining relates to the validity of a bequest in the will to the American Bible Society. The bequest was in the following terms: “Third. After the payment of all my just debts and funeral expenses, * * * I give and bequeath all the residue of my property to the American Bible Society, * * * to be used by said society for the promulgation of tlie Holy Bible.” We are asked to hold that this bequest was void as being a gift in trust, without a definite or ascertainable beneficiary capable of enforcing the trust. The answer to this proposition is that the gift was limited by the donor only to the precise use for which the donee was incorporated. Laws 1841, c. 68. Such a limitation does not invalidate the gift. Wetmore v. Parker, 52 N. Y. 450, 458. The decree of the surrogate should be affirmed. All concur. Decree affirmed, with costs to the respondent to be paid out of the estate.