## *In re* SIMMONS' WILL.

*(Supreme Court, General Term, Fifth Department.*　April 11, 1890.)

WILLS—EXECUTION—SUBSCRIBING WITNESSES.

> Under 3 Rev. St. N. Y. (7th Ed.) p. 2285, § 40, requiring a testator to sign his will in the presence of the attesting witnesses, or to acknowledge the signature to each of them, and to declare at the time that the instrument subscribed is his last will, probate of a will is properly revoked when the name of the testator was not signed in the presence of either of the attesting witnesses, and he did not acknowledge the signature to be his to either of them, and did not declare the instrument to be his last will and testament beyond answering "Yes" to the question of one of the witnesses as to whether testator and his wife were making their wills.

Appeal from surrogate's court, Ontario county.

A decree was entered revoking probate of the will of Richmond Simmons, deceased, and proponent appeals. For former report, see 8 N. Y. Supp. 947.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*A. P. Rose*, for appellant. *Edward Hicks*, for respondents.

CORLETT, J. On the 18th day of February, 1882, Richard Simmons made his last will and testament. He died in 1887, and the will was admitted to

probate in September of that year. A year later two of the next of kin of the deceased presented their petition for the revocation of the probate of the will. The surrogate of Ontario county heard the matter, revoked the probate of the will, made findings, and wrote an opinion. The will was brief, and, including the attestation clause, was written on one-half sheet of paper. All his property was given to Abby M. Simmons, his wife, who was named executrix. Mary E. Trask and Lucinda M. Trask signed the will as subscribing witnesses. Both were examined on the hearing for revocation. Mary testified, among other things, that, at the time she subscribed as a witness, the deceased, Mr. Simmons' wife, and the other subscribing witness were present. That the deceased was standing and the other two were sitting in the kitchen, holding some papers in their hands, and that as witness went into the house she asked, "Are you making your wills?" The deceased said, "Yes. He said he wanted us to put our names to the paper, and pointed out where he wished us to sign it." That she then signed it. She testified to having some recollection of seeing testator's name on the paper. Her recollection is that Mr. Simmons made no other remark while she was present except the one above stated. She testified that she did not read the attestation clause; that the deceased made no mention of its contents. She also testified that she signed two papers on that occasion, one probably being the will of the wife of Mr. Simmons. Lucinda, the other subscribing witness, testified that Mr. Simmons asked her to sign the paper; that she did so; that no portion of it was read. She also stated that the deceased did not read the attestation clause to her, or state its contents. The deceased was 67 years of age at the time the will was drawn; was a man of affairs; had acted as justice of the peace and notary public; and had been a deputy in a county clerk's office, and was accustomed to draw papers for other people. The surrogate's sixth finding is as follows: "That at the time of the alleged execution of the said will the witness Lucinda was at the house of the said testator; that the said testator, leaving the witness Lucinda there, went to the house of the witness Mary, and merely said to her, 'Mary, I want you to come over to my house;' and that Mary went to the house of the testator, where she found the witness Lucinda and the testator's wife and the testator, and that upon entering the room where they were she said, 'Are you making your wills?' to which Mr. Simmons responded simply, 'Yes;' that the testator then laid a paper upon the table, and asked said Mary and Lucinda to put their names to said paper, and pointed where he wished them to write their names; that they wrote them there, and that they then supposed or inferred from what took place that the paper was the will of Mr. Simmons; that this paper to which their names were so affixed is the will in question." The seventh finding is: "That said testator did not subscribe his name to said paper in the presence of these witnesses, or either of them, and the evidence fails to show affirmatively that at the time these witnesses signed their names to said paper the same had already been signed by the testator; or that the signature of the testator to said instrument was seen by or was visible to the said witnesses, or was pointed out to them by the testator; or that the testator acknowledged to either of said witnesses that a signature affixed to said instrument was his; or that the testator declared the said instrument so subscribed by him to be his last will and testament; or that he requested either of said witnesses to sign her name as a witness at the end of the will." "*Eighth.* That neither of said witnesses read the attestation clause to the proposed will; nor was it read to them; nor was the substance of it stated to them; nor did they know the contents thereof." The appellant excepted to each of the above findings. The conclusions of law were—"*First*, that the alleged will of Richmond Simmons was not duly executed, in that it was not subscribed by the testator in the presence of the attesting witnesses, and in that, if previously subscribed, said testator did not acknowledge to said witnesses that he had so signed, or

that the signature was his, and in that said testator did not properly declare that the said instrument was his last will and testament; *second,* that the prayer of the petition in this proceeding must be granted, and that the decree heretofore made, admitting said alleged will to probate, must be vacated and the probate revoked." These conclusions were excepted to.

The statute in reference to a will is as follows: "*First.* It shall be subscribed by the testator at the end of the will. *Second.* Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses. *Third.* The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament. *Fourth.* That there shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will at the request of the testator." 3 Rev. St. N. Y. (7th Ed.) p. 2285, § 40. The first requirement was complied with. It was subscribed by the testator at the end of the will. The second was not complied with. The name of the testator was not signed in the presence of either of the attesting witnesses, nor did he acknowledge the signature to be his to either of them. The third was not complied with, unless his answer, "Yes" to the question of one of the subscribing witnesses, when she inquired (obviously referring to the testator and his wife) whether they were making their wills, should be construed as sufficient. No question is made about the fourth, as it was signed by the attesting witnesses at the end of the will. A reference to the case shows that the witness Lucinda has no recollection of seeing the testator's signature at the time she signed. All she says on that subject is: "I see Mr. Simmons' signature now. I did not see or read any writing on the paper at the time I signed it. I cannot say whether Mr. Simmons' signature was there or not at the time." In *Mitchell* v. *Mitchell,* 16 Hun, 97, affirmed in 77 N. Y. 596, it was held that the will could not be admitted to probate because one of the witnesses did not see the testator's signature. This was approved in *Re Will of Mackay,* 110 N. Y. 611, 18 N. E. Rep. 433, which in most respects is stronger in favor of probate than in the case at bar. There the testator said: "'Gentlemen, what I sent for you for was to sign my last will and testament.' Thereupon he took from his writing-desk the instrument offered for probate, and, laying it before the witnesses, said: 'It is now already awaiting your signatures.' He then presented the instrument to the witness McCarrier for his signature, and he signed it, saying, as he did so, 'I am glad, Father Mackay, you are making your will at this time. I don't suppose it will shorten your life any.' To which he replied, 'Yes. He wanted it done, and off his mind.' And then the witness Mulligan, who had joined in this conversation, signed the instrument as a witness. At the time of exhibiting the instrument to the subscribing witnesses, he told them it was his will, but he handed it to them so folded that they could see no part of the writing except the attestation clause, and they did not see either his signature or seal." The court held that the decisions below, refusing probate, were right, because the signature was not seen, and then referred to the case above quoted, holding the same to be true where one of them did not see the signature. In *Re Will of Hunt,* 110 N. Y. 278, 18 N. E. Rep. 106, it was assumed that the witnesses saw the signature of the testator, and also that they knew the contents of the attestation clause. Here neither of the witnesses knew the contents of the attestation clause, and one of them did not see the signature. *In re Will of Van Geison,* 47 Hun, 5; *In re Will of Look,* 7 N. Y. Supp. 298. Even if the learned counsel for the appellant is right in his contention that some of the findings of the surrogate against him were too strong, still, having reference to all the proofs in the case, the surrogate could not have reached a different conclusion than he did. The decree of the surrogate must be affirmed. All concur.