## ESTATE OF LENA FLEISHMAN.

[No. 11,697; decided January 13, 1892.]

Will—Attestation in Presence of Testator.—There must be two attesting witnesses to a will, each of whom must sign his name as a witness at the end of the will, at the testator's request and in his presence. In the presence of the testator means that he must not only be present corporally, but mentally as well, capable of understanding the acts which are taking place before him.

A Will is not Attested in the Presenec of the Testatrix when the witnesses subscribe their names in an apartment adjoining the room in which she is lying ill, where it is impossible for her to see them, she having previously signed her name while reclining on her bed, not being able to rise therefrom.

Lena Fleishman died on November 16, 1891, leaving a husband and two brothers. On December 5, 1891, a petition was filed by the husband for the probate of a will dated November 15, 1891. On December 23, 1891, the brothers filed written grounds of opposition to the probate of the will. The grounds of contest appear from the opinion of the court.

Sullivan & Sullivan, for contestants.

Craig & Meredith, for proponent.

COFFEY, J. The question here is whether the instrument propounded for probate as the will of Lena Fleishman, deceased, was signed by the persons whose names are appended thereto as subscribing witnesses in the presence of the testatrix.

Section 1276 of the Civil Code of California provides, in the matter of an attested will, subdivision 4, that there must be two attesting witnesses, each of whom must sign his name as a witness, at the end of the will, at the testator's request and in his presence.

In presence of the testator means that the testator must not only be present corporally, but mentally as well, capable of understanding the acts which are taking place before him.

In this case the instrument was signed by the subscribing witnesses in an apartment adjoining the room in which

the testatrix was lying ill upon her bed. Between the bed, and opposite where her head lay, there was a partition wall, an absolutely opaque substance, dividing the two apartments, and on the other side of that wall, at a table near the window, without the sight or hearing of the testatrix, the two witnesses subscribed their names, the testatrix having previously signed her name while reclining on her bed, not being able to rise therefrom. It was impossible for her to see what was transpiring on the other side of the wall by natural vision.

These are the facts in evidence. Subjoined is a review of the cases cited by proponent in support of the proposition that there was a valid execution of the paper proffered.

In Hogan v. Grosvenor, 10 Met. 56, 43 Am. Dec. 414, the attesting witnesses signed in the presence of the testator.

In Ambre v. Weishaar, 74 Ill. 110, "the testatrix could have seen the witnesses in the dining-room at the table, while they were signing the will."

Redfield on Wills declares the rule as follows: "The rule requires that the witnesses should be actually within the range of the organs of sight of the devisor, and where the devisor cannot by any possibility see the act, that is out of his presence": Redfield on Wills, 247 (star * page).

In Shires v. Glasscock, 2 Salk. 688, the court decided "that it is enough if the testator might see—it is not necessary that he should actually see—them (the attesting witnesses)."

In Dary v. Smith, 3 Salk. 395, the court sustained the will, saying, "it was a sufficient subscribing within the meaning of the statute; because it was possible that the testator might see them (the attesting witnesses) subscribe their names."

In Todd v. Winchelsea, 2 Car. & P. there was a question as to whether the will was attested in the room where the will was executed, or whether in a part of the adjoining room where the testator "might have seen" the witnesses attest the will. The court in that case, instructing the jury, said: "You will therefore have to say whether the will was attested in the bedroom; if so, there is no doubt. But, if

you think it was attested in the other room, whether it was attested in such part of that room that the testator might have seen the witnesses attest it. In either of those cases plaintiffs are entitled to a verdict; but if you think otherwise, I am of the opinion that, in point of law, you ought to find a verdict for the defendants.''

In Hill v. Barge, 12 Ala. 695, 696, we find: ''The design of the statute in requiring the attestation to be made in the presence of the testator was to prevent the substitution of a surreptitious will. In the presence of the testator, therefore, is within his view. He must be able to see the witnesses attest the will, or, to speak with more precision, their relative position to him, at the time they are subscribing their names as witnesses, must be such that he may see them if he thinks proper.''

In Nock v. Nock, 10 Gratt. 106, the witness signed at a bureau in an adjoining room, sixteen or seventeen feet from the bed where the testator was lying with his head raised up, and from which he could, through an open door, plainly see the witnesses, excepting their forearms and hands, while writing.

In Lamb v. Girtman, 26 Ga. 629, it was held that the lower court erred because it refused to charge that, if the testator might have seen the attestation, it is sufficient.

In Wright v. Lewis, 5 Rich. 212, 216, 55 Am. Dec. 714, the testator stepped into and remained in the adjoining room, from which he might have seen the witnesses subscribe their names.

In Watson v. Pipes, 32 Miss. 468, the court say: ''It is settled by all the authorities that it is not absolutely essential that the testator should actually see, but if the witnesses be shown to have been within the scope of the testator's view from his actual position, it will be sufficient.''

In McElfresh v. Guard, 32 Ind. 412, the trial court instructed the jury that ''the law requires attestation in the presence of the testator to prevent obtaining another will in place of the true one. It is therefore enough that the testator might see,'' etc. The instruction was sustained.

Contestants refer to the following cases as instances of what has been deemed not a sufficient signing in the testator's presence:

In Edelston v. Spake, Holt, 222, 223, Mod. 259, Comb. 156, the witnesses subscribed their names in a hall adjoining the room where the testator lay, but in such a place that he could not see them.

In Machell v. Temple, 2 Show. 288, the witnesses withdrew out of sight into another room, at the request of the testator, because the noise in his sick room disturbed him.

In Broderick v. Broderick, 1 P. Wms.. 239, 4 Vin. Abr. 534, the witnesses, for the ease of the testator, went downstairs into another room, to attest his will. See, also, Onions v. Tyrer, Id. 343.

In Clark v. Ward, 1 Bro. P. C. 137, the witnesses subscribed at a window, in a passageway, where they could see but part of the bed, and the testator, lying thereon, could not see them.

In Tribe v. Tribe, 13 Jur. 793, 1 Rob. 775, the testatrix lay in bed with the curtains drawn, and her back turned toward the witnesses, who were signing at a table in the same room.

In Wright v. Manifold, 1 M. & S. 294, the testator could not, from his room, have seen into the room where the witnesses signed, without putting his head out into a passageway which connected the two rooms, although, as the witnesses were retiring from his room, he called upon his attendant to assist him in rising.

In Ellis' Case, 2 Curt. 395, the witnesses were in an adjoining room, where they could neither see the testator nor be seen by him, although they were so near that they could hear him breathe.

In Colman's Case, 3 Curt. 118, folding doors between the two rooms were open, being tied back, but the table on which the witnesses wrote was so situated that the testator could not possibly have seen it.

In Norton v. Bazett, Dea & S. (5 Am. Law Reg. 52), the witnesses were clerks of the testator, and called by him from an outer office into his own, where he was sitting with his

back toward the door. The will was written on two separate sheets, the second (see Bond v. Sewell, 3 Burr. 1773; Gass v. Gass, 3 Humph. 278; Horsford's Case, L. R. 3 Prob. 211) of which he signed, and they (his table being full of papers) took it into their room for attestation. When they returned he was standing up, but otherwise relatively in the same position as before, and from which it was impossible for him to have seen them while signing.

In Killick's Case, 3 Sw. & Tr. 578, the deceased could, by changing her position in bed, have seen the witnesses sign her will in another room, but the proof was that she did not do so.

In Violette v. Therriau, 1 Pug. & Bus. (N. B.) 389, the testator had been paralyzed and was, when his will was executed, unable to rise from his bed without assistance. A small table stood at the foot of his bed, and was concealed therefrom by the footboard of the bed rising above it, so that, although he could see the persons of the witnesses, their arms and hands and the paper on which they wrote on the table were invisible.

In Robinson v. King, 6 Ga. 539, the testator signed his will in bed, and was not able to get up without assistance. The witnesses wrote their names thereto on a piazza adjoining his room, about ten feet from him. There was a door communicating with the room, but their relative positions were such that they could not see each other.

In Brooks v. Duffell, 23 Ga. 441, a will was executed by the testator in bed, toward evening, and, for the sake of seeing better, the witnesses stepped to a door, which, when open swung against the side of his bed, so that, without changing his position, it would have been impossible to see them, and he was too weak to notice anything that was going on.

In Reed v. Roberts, 26 Ga. 294, 71 Am. Dec. 210, the testator, in extremis, was lying in a bed with four high posts, having a counterpane stretched across those at the head to protect him from the air. After he had signed, the will was taken behind the head of the bed, to a chest against the wall some seven or eight feet distant and attested. The

proof showed that he was too feeble to change his position without help.

In Graham v. Graham, 10 Ired. 219, the witnesses went into another room to sign at a chest standing against the partition, two or three feet from the open door. The bed in which the testator lay stood also against the partition, with its head nearly opposite to the chest, so that the testator could, by turning his head, see the backs of the witnesses as they sat at the chest writing, but he could not see their faces, arms or hands, nor the paper on which they were writing.

In Lamb v. Girtman, infra, the testator signed his will at a small table in a hallway, and then, being in feeble health, withdrew to his room adjoining, accompanied by a witness, who returned to the others, and then they all signed. The testator, when afterward noticed by them, was lying in the ordinary attitude on his bed, and in that position could not have seen the witnesses when signing.

In Reynolds v. Reynolds, 1 Spears, 253, 40 Am. Dec. 599, the testator, after being raised to sign his will, sank back in his bed, and the witnesses went to a table in a hall and signed their names. The testator could not see them as he lay, and, although he had strength to rise sufficiently to see them, yet he did not rise.

In Jones v. Tuck, 3 Jones, 202, the testator could not see the witnesses while signing his will in another room, without raising himself up on his elbow, but this the witnesses thought him capable of doing, because they saw him turn several times in his bed.

In Orndorff v. Hummer, 12 B. Mon. 619, the table on which the witnesses wrote stood just behind the head of the lounge on which the testator lay, and four or five feet therefrom. He could not, from his position, have seen the witnesses at all, and it seemed doubtful whether he could, without assistance, have changed his posture.

In Neil v. Neil, 1 Leigh, 6, the testator, when two of the witnesses signed at a table by his bed, lay with his back to them, and his sight was poor, and the light in the room dim; he could not rise alone.

In Boldry v. Parris, 2 Cush. 433, the testatrix and one witness signed in her room, and then that witness took the will into an adjoining room, where it was signed by the other two witnesses, out of the testatrix's sight altogether.

In Edelen v. Hardy, 7 Har. & J. 61, 16 Am. Dec. 292, the testator, after signing, requested the witnesses to retire and they went into an adjoining room, separated from the other by a plank partition; there was no direct communication between the rooms, nor could testator have possibly seen them: See Russell v. Falls, 3 Har. & McH. 457, 1 Am. Dec. 380. See, also, Redfield on Wills, sec. 245, et seq; Jarman on Wills, 5th ed. (Bigelow), star * p. 87, et seq., and notes; also section 1276, Civil Code.

In conclusion, the court may refer to the record in the matter of the estate of J. B. Firnkas, deceased, No. 2774, of this court, decided August 19, 1884.

In that case the attesting witnesses signed the alleged will of the deceased, not in the actual presence of the testator, but in an adjoining room where they could not be seen by him at the time they signed their names as witnesses to the will.

This court held that the instrument was not attested in the manner required by law, and denied probate thereof.

The facts in the Firnkas will case and in the case at bar are curiously coincidental, and the judgment here should correspond.

Judgment for contestants.

---

### ATTESTATION AND WITNESSING OF WILLS.

**Object and Purpose of Attestation.**—In Appeal of Canada, 47 Conn. 450, the court declares that the primary reason for the presence of a witness to a will is not that he has known the testator long or intimately; not that he is required to use or have any skill in detecting the presence of insanity or other forms of mental disease or weakness; not that he is to have any opportunity for discovering the fraudulent scheme which may have culminated in the act of the testator. If the presence of one or three witnesses provides any degree of security against the procurement of a will from a competent testator by fraud, or against the procurement of one from a testator without mental capacity, it is an incidental benefit; it was not in the mind of the law. That only intended that the witness should be able, with

a great degree of certainty at all times, possibly at great length of time after his attestation, to testify that the testator put his name upon the identical piece of paper upon which he placed his own. Similarly, in Pollock v. Glassel, 2 Gratt. 439, the court holds that the object of witnessing a will is ''not to obtain from the witnesses a certificate of the essential facts of the transaction, but to provide the means of proving them by persons entitled to confidence and selected for the purpose. The subscription of their names by the witnesses denotes that they were present at, and prepared to prove, the due execution of the instrument so attested, and nothing more''; See, also, Huff v. Huff, 41 Ga. 696. Some authorities, however, take a broader view of the purposes of attestation and witnessing. Thus, in Re Pope's Will, 139 N. C. 484, 111 Am. St. Rep. 813, 52 S. E. 235, the court holds: ''One principal purpose in requiring the attestation of wills is to surround the testator with witnesses who are charged with the present duty of noting his condition and mental capacity. Another is to insure the identity of the instrument and to prevent the fraudulent substitution of another document at the time of its execution.'' To the same effect are Odenwaelder v. Schorr, 8 Mo. App. 458; Cornelius v. Cornelius, 52 N. C. 593. This latter view is also sustained by other decisions set forth in the discussion of the particular requisites of attestation and witnessing below.

Attestation vs. Subscription.—In some earlier decisions, attestation is distinguished from subscription. It is said: ''To attest the publication of a paper as a last will, and to subscribe to that paper the names of the witnesses, are very different things, and are required for obviously distinct and different ends. Attestation is the act of the senses, subscription is the act of the hand; the one is mental, and the other mechanical; and to attest a will is to know that it was published as such, and to certify the facts required to constitute an actual and legal publication; but to subscribe a paper published as a will is only to write on the same paper the name of the witness for the sole purpose of identification''; Swift v. Wiley, 1 B. Mon. 114; Upchurch v. Upchurch, 16 B. Mon. 102; In re Downie's Will, 42 Wis. 66. In later decisions, however, this distinction is abandoned. In Skinner v. American Bible Soc., 92 Wis. 209, 65 N. W. 1037, the court says: ''It would be difficult, no doubt, to satisfactorily define that element in the attestation of a will which is not also present in the mere subscription to a will. No physical act is required in the one which is not also required in the other, and it is not clear what mental act or fact appropriate to the one is absent from the other''; To the same effect, Luper v. Werts, 19 Or. 122, 23 Pac. 850. Similarly, in Drury v. Connell, 177 Ill. 43, 52 N. E. 368, Sloan v. Sloan, 184 Ill. 579, 56 N. E. 952, and Calkins v. Calkins, 216 Ill. 458, 108 Am. St. Rep. 233, 75 N. E. 182, 1 L. R. A., N. S., 393, the court holds that a requirement of statutory law that a will shall be ''attested'' renders essential the ''subscriptions'' thereof by the attesting witness, that act being in-

volved in attestation. And lest the idea of attestation be confused with the mere physical act of subscription, the court in Skinner v. Lewis, 40 Or. 571, 62 Pac. 523, 67 Pac. 951, holds: ''The attestation . . . is not a matter of mere formality in affixing one's name to the will as a witness. There must be an active mentality connected with it.''

Necessity Witnesses.—It is prerequisite to the validity of a will that it be attested and witnessed in conformity with statute: Orth v. Orth, 145 Ind. 184, 57 Am. St. Rep. 185, 42 N. E. 277, 32 L. R. A. 298; Clark v. Miller, 65 Kan. 726, 68 Pac. 1071; Reynolds v. Reynolds, 1 Spear, 253, 40 Am. Dec. 599; Davis v. Davis, 6 Lea, 543; Simmons v. Leonard, 91 Tenn. 183, 30 Am. St. Rep. 875, 18 S. W. 280; Blanchard's Heirs v. Blanchard's Heirs, 32 Vt. 62; Pollock v. Glassel, 2 Gratt. 439; Rosser v. Franklin, 6 Gratt. 1, 52 Am. Dec. 97; McMechen v. McMechen, 17 W. Va. 683, 41 Am. Rep. 682. This rule also applies in cases of interlineations, corrections, and alterations to wills: Eschbach v. Collins, 61 Md. 478, 48 Am. Rep. 123; Gardiner v. Gardiner, 65 N. H. 230, 19 Atl. 651, 8 L. R. A. 383; Jackson v. Holloway, 7 Johns. 304. See, also, In re Penniman, 20 Minn. 245 (Gil. 220), 18 Am. Rep. 368, holding that after alterations and interlineations have been made in a will, it must not only be resubscribed by the witnesses, but also again signed by the testator. The provision often found in the statutes of wills, that the witness to a will must be ''credible'' means that they must be ''competent,'' the words ''credible'' and ''competent'' being synonymous when used in this connection: Sloan v. Sloan, 184 Ill. 579, 56 N. E. 952; Standley v. Moss, 114 Ill. App. 612; Rucker v. Lambdin, 12 Smedes & M. 230; Fowler v. Stagner, 55 Tex. 393. The requirements of attestation and witnessing generally apply to wills of personalty as well as of realty (Hooks v. Stamper, 18 Ga. 471; Lewis v. Maris, 1 Dall. 278; Town of Pawtucket v. Ballou, 15 R. I. 58, 2 Am. St. Rep. 868, 23 Atl. 43; Reynolds v. Reynolds, 1 Spear, 253, 40 Am. Dec. 599; Rosser v. Franklin, 6 Gratt. 1, 52 Am. Dec. 97; Blanchard's Heirs v. Blanchard's Heirs, 32 Vt. 62), though formerly they were not prescribed in cases of personalty: Davis v. Davis, 6 Lea, 543; Moore v. Moore's Exr., 8 Gratt. 307 (before the statute of 1835). In the absence of statutory requirement, a will is valid without witnessing or attestation: In re High, 2 Doug. 515. Moreover, the requirements of attestation and witnessing, as set forth in this article, do not apply to nuncupative wills, nor in jurisdictions where they are recognized to olographic wills.

Number of Witnesses.—Under the law prevailing in most jurisdictions, two competent witnesses to a will are sufficient: In re Walker 110 Cal. 387, 52 Am. St. Rep. 104, 42 Pac. 815, 30 L. R. A. 460; Clark v. Miller, 65 Kan. 726, 68 Pac. 1071; Griffith's Exr. v. Griffith, 5 B. Mon. 511; Odenwaelder v. Schorr, 8 Mo. App. 458; Williams v. Miles, 68 Neb. 463, 110 Am. St. Rep. 431, 94 N. W. 705, 96 N. W.

151; In re Look's Will, 5 N. Y. Supp. 50; In re Williams' Will, 2 Conn. Sur. 579, 15 N. Y. Supp. 828, judgment affirmed, 64 Hun, 636, 19 N. Y. Supp. 613; In re Nevin's Will, 4 Misc. Rep. 22, 24 N. Y. Supp. 838; Luper v. Werts, 19 Or. 122, 23 Pac. 850; In re Irvine's Estate, 206 Pa. 1, 55 Atl. 795; Davis v. Davis, 6 Lea, 543; Simmons v. Leonard, 91 Tenn. 183, 30 Am. St. Rep. 875, 18 S. W. 280; Pollock v. Glassel, 2 Gratt. 439; Rosser v. Franklin, 6 Gratt. 1, 52 Am. Dec. 97; Skinner v. American Bible Soc., 92 Wis. 209, 65 N. W. 1037. Likewise under the custom prevailing in California before the formation of the state government, two witnesses were sufficient: Adams v. Norris, 64 U. S. 353, 16 L. Ed. 539, 1 Fed. Cas. No. 51; McAll. 253. In other jurisdictions, however, the old English rule requiring three or four competent witnesses still prevails: Fortner v. Wiggins, 121 Ga. 26, 48 S. E. 694; Stirling v. Stirling, 64 Md. 138, 21 Atl. 273; Fleming v. Morrison, 187 Mass. 120, 105 Am. St. Rep. 386, 72 N. E. 499; Gardiner v. Gardiner, 65 N. H. 230, 19 Atl. 651, 8 L. R. A. 383; Reynolds v. Reynolds, 1 Spear, 253, 40 Am. Dec. 599; Dean v. Heirs of Dean, 27 Vt. 746; Blanchard's Heirs v. Blanchard's Heirs, 32 Vt. 62. In Reynolds v. Reynolds, 1 Spear, 253, 40 Am. Dec. 599, the reason for requiring three or four witnesses is said to be to protect men against fraudulent wills, for confederates in fraud usually conspire in pairs and can seldom trust with safety any third person.

A will executed with only one witness is invalid (Potts v. Felton, 70 Ind. 166), and where three witnesses are requisite, a will executed with only two is void as a muniment of title; a judgment admitting it to probate is a nullity, and cannot be validated by lapse of time: Fortner v. Wiggins, 121 Ga. 26, 48 S. E. 694.

**Sufficiency of Substantial Conformity with Law.**—Only a substantial compliance with the requirements of the law in the attestation and witnessing of wills is requisite, and formalities are not required which the legislature has not plainly prescribed: Montgomery v. Perkin, 2 Met. (Ky.) 448, 74 Am. Dec. 419; Savage v. Bulger, 76 S. W. 361, 25 Ky. Law Rep. 763; Lewis v. Lewis, 11 N. Y. 220, 13 Barb. 17; Hoystradt v. Kingman, 22 N. Y. 372; Gilbert v. Knox, 52 N. Y. 125; Lane v. Lane, 95 N. Y. 494; In re Jones' Will, 85 N. Y. Supp. 294; In re Williams' Will, 2 Conn. Sur. 579, 15 N. Y. Supp. 828, 64 Hun, 636, 19 N. Y. Supp. 613; In re Voorhis' Will, 125 N. Y. 765, 26 N. E. 935, 54 Hun, 637, 7 N. Y. Supp. 596; In re Moore's Will, 109 App. Div. 762, 96 N. Y. Supp. 729. "It is not necessary that any particular form be followed, or that any rigid rule of construction of the statute be imposed. Any other interpretation would be to confine the execution of testamentary documents within a narrow compass, and would in many instances defeat the expressed intentions of a person": In re Menge's Will, 13 Misc. Rep. 553, 35 N. Y. Supp. 493. Yet, in construing the statutes of wills, it is the intention of the legislature that must be kept in mind, and not that

of the testator: In re Blair's Will, 84 Hun, 581, 32 N. Y. Supp. 845; In re Fish's Will, 88 Hun, 56, 34 N. Y. Supp. 536. And in Savage v. Bowen, 103 Va. 540, 49 S. E. 668, it is said that courts should strictly follow the requirements of the law in the execution of wills, but should not supplement those requirements with others.

**Subscription or Acknowledgment by Testator.**—It is provided by the various statutes of wills in effect in the several states that a will must be signed or subscribed (as differently provided) by the testator with his name or mark, or, as permitted in some states, may be signed or subscribed at the direction of the testator by another in his stead.

**Necessity of Its Being Before or to Witnesses.**—In order to validate a will, either this act of signing or subscribing must be done in the presence of the witnesses to the will, or in lieu thereof the testator must acknowledge the instrument or signature to the witnesses: Yoe v. McCord, 74 Ill. 33; Webster v. Yorty, 194 Ill. 408, 62 N. E. 907; Reed v. Watson, 27 Ind. 443; In re Convey's Will, 52 Iowa, 197, 2 N. W. 1084; Denton v. Franklin, 9 B. Mon. 28; Etchison v. Etchison, 53 Md. 348; Stirling v. Stirling, 64 Md. 138, 21 Atl. 273; Dewey v. Dewey, 1 Met. (Mass.) 349, 35 Am. Dec. 367; Hogan v. Grosvenor, 10 Met. (Mass.) 54, 43 Am. Dec. 414; Nickerson v. Buck, 12 Cush. 332; Ela v. Edwards, 16 Gray, 91; Mundy v. Mundy, 15 N. J. Eq. 290 (so holding under the law of 1851, but under the statute of wills of 1741 an acknowledgment was not sufficient); Chaffee v. Baptist Missionary Convention, 10 Paige, 85, 40 Am. Dec. 225; Baskin v. Baskin, 36 N. Y. 416; In re Look's Will, 5 N. Y. Supp. 50; In re Look, 54 Hun, 635, 7 N. Y. Supp. 298, judgment affirmed, 125 N. Y. 762, 27 N. E. 408; In re Williams' Will, 2 Conn. Sur. 579, 15 N. Y. Supp. 828, judgment affirmed, 64 Hun, 636, 19 N. Y. Supp. 613; In re Carll's Will, 38 Misc. Rep. 471, 77 N. Y. Supp. 1036; Eelbeck's Devisees v. Granberry, 3 N. C. 232; Raudebaugh v. Shelley, 6 Ohio St. 307; In re Irvine's Estate, 206 Pa. 1, 55 Atl. 795 (such is the law in case of wills disposing of property to charitable or religious uses); Roberts v. Welch, 46 Vt. 164; In re Claflin's Will, 73 Vt. 129, 87 Am. St. Rep. 693, 50 Atl. 815; Rosser v. Franklin, 6 Gratt. 1, 52 Am. Dec. 97. Where a testator makes his mark to his will in the presence of the witnesses, no acknowledgment is necessary (Savage v. Bulger, 25 Ky. Law Rep. 763, 76 S. W. 361), and where the testator makes such acknowledgment to the witnesses, they need not see him sign it (Yoe v. McCord, 74 Ill. 33; Webster v. Yorty, 194 Ill. 408, 62 N. E. 907; Etchison v. Etchison, 53 Md. 348; Stirling v. Stirling, 64 Md. 138, 21 Atl. 273; Nickerson v. Buck, 12 Cush. 332; Cravens v. Faulconer, 28 Mo. 19; Sisters of Charity v. Kelly, 67 N. Y. 409, reversing 7 Hun, 290; Simmons v. Leonard, 91 Tenn. 183, 30 Am. St. Rep. 875, 18 S. W. 280; Roberts v. Welch, 46 Vt. 164; Skinner v. American Bible Soc., 92 Wis. 209, 65 N. W. 1037), although he signed his mark only: In re Kane's Will, 20 N. Y. Supp. 123.

The acknowledgment need not be made to both nor to all witnesses at the same time: Chase v. Kittredge, 11 Allen, 49, 87 Am. Dec. 687; In re Diefenthaler's Will, 39 Misc. Rep. 765, 80 N. Y. Supp. 1121. Moreover, where the witnesses are in the presence of the testator while he signs the will, it is immaterial that the witnesses do not actually see him sign: Etchison v. Etchison, 53 Md. 348; In re Bedell's Will, 2 Conn. Sur. 328, 12 N. Y. Supp. 96; Simmons v. Leonard, 91 Tenn. 183, 30 Am. St. Rep. 875, 18 S. W. 280. But if the witnesses are not present at the time of the signing of the testator's will, and there is no subsequent acknowledgment sufficient to fulfill the·requirements of the law, the will is not executed at all: Sisters of Charity v. Kelly, 67 N. Y. 409; Luper v. Werts, 19 Or. 122, 23 Pac. 850; Richardson v. Orth, 40 Or. 252, 66 Pac. 925, 69 Pac. 455; Roberts v. Welch, 46 Vt. 164.

**Object of Requirement.**—The object of the foregoing requirement in the execution of will is to identify and authenticate the instrument as one actually subscribed by the testator: Baskin v. Baskin, 36 N. Y. 416.

**Sufficiency of Acknowledgment.**—There is a diversity of decision as to the sufficiency of an acknowledgment to the witnesses, depending upon the terms of the statutes of wills in the respective jurisdictions, some of them providing that the testator must acknowledge the will to be his act and deed, and others providing that he must acknowledge his signature to the will to be his act and deed. In Hobart v. Hobart, 154 Ill. 610, 45 Am. St. Rep. 151, 39 N. E. 581, affirming 53 Ill. App. 133, the court points out and comments on this distinction, saying in substance: In England and in New York, and perhaps some other of the states, the statute requires that there must be an acknowledgment of the signature. Decisions based on this provision of law hold in substance that there is not a sufficient acknowledgment of the signature by the testator when he produces a will and requests the witnesses to sign it, unless his signature is visibly apparent on the face of the paper, and is seen, or can be seen, by the witnesses, especially if he does not explain the instrument to them. These decisions are not, however, applicable where the statute merely requires that the testator acknowledge the will or codicil to be his act and deed, and does not specially and in terms require the signature to be acknowledged. A man may acknowledge an entire written instrument to be his act and· deed without necessarily calling the attention of those before whom he produces it to any particular part of the instrument. But if he is required to make acknowledgment of a specified part of it, it may be requisite that attention should be directed to that part.

Thus where the law is that the will must be acknowledged, it is not necessary that the witnesses see the signature of the testator to the will, or that the testator acknowledge his signature, or that the witnesses know that the instrument is a will, but where the

testator acknowledges to the witnesses the execution of the instrument by himself the requirement of the law is satisfied: Gould v. Chicago Theological Seminary, 189 Ill. 282, 59 N. E. 536; In re Barry's Will, 219 Ill. 391, 76 N. E. 577; Simmons v. Leonard, 91 Tenn. 183, 30 Am. St. Rep. 875, 18 S. W. 280; Rosser v. Franklin, 6 Gratt. 1, 52 Am. Dec. 97. Thus a declaration by the testator to the witnesses that the instrument is his last will (Dewey v. Dewey, 1 Met. (Mass.) 349, 35 Am. Dec. 367; Nickerson v. Buck, 12 Cush. 332), or that it is his act and deed (In re Barry's Will, 219 Ill. 391, 76 N. E. 577; Rosser v. Franklin, 6 Gratt. 1, 52 Am. Dec. 97), or a request by the testator to the witnesses to attest his last will, he producing it for their signature (Tudor v. Tudor, 17 B. Mon. 383; Dewey v. Dewey, 1 Met. (Mass.) 349, 35 Am. Dec. 367; Nickerson v. Buck, 12 Cush. 332; Simmons v. Leonard, 91 Tenn. 183, 30 Am. St. Rep. 875, 18 S. W. 280), is sufficient. Moreover, the declaration or request need not be spoken by the testator himself, but may be made by another in his presence, he himself remaining silent, where it appears from the surrounding circumstances that the other was acting for the testator at his instance: Denton v. Franklin, 9 B. Mon. 28. See, also, to same effect, In re Kane's Will, 20 N. Y. Supp. 123. Furthermore, this acknowledgment need not be made in language at all, but any act, sign, or gesture of the testator which indicates an acknowledgment of the will with unmistakable certainty, will. suffice: Gould v. Chicago Theological Seminary, 189 Ill. 282, 59 N. E. 536; In re Barry's Will, 219 Ill. 391, 76 N. E. 577; Ela v. Edwards, 16 Gray, 91; Ludlow v. Ludlow, 36 N. J. Eq. 597. Thus where the testator, having heard read the attesting clause of his will reciting that he had executed the instrument as his will, handed the subscribing witnesses the pen and saw them sign it, but uttered not a word, he acknowledged it as satisfactorily as though he had said, "I, ———, do acknowledge this instrument to be my last will and testament": Allison v. Allison, 46 Ill. 61, 92 Am. Dec. 237.

Where, however, the law is that the signature to the will must be acknowledged, it is requisite that the testator's signature affixed to the will be shown to the witnesses and identified and recognized by the testator, and in some apt and proper manner acknowledged by him to be his signature: Lewis v. Lewis, 11 N. Y. 220, affirming 13 Barb. 17; Baskin v. Baskin, 36 N. Y. 416; In re Mackey's Will, 110 N. Y. 611, 6 Am. St. Rep. 409, 18 N. E. 433, 1 L. R. A. 491; In re Eakin's Estate, 13 Misc. Rep. 557, 35 N. Y. Supp. 489; Raudebaugh v. Shelley, 6 Ohio St. 307. Thus where at the time a witness subscribed a will she had just entered the house where the testator was, and as she entered said to the testator, "Are you making your will?" to which he responded, "Yes," and added that he wanted her to put her name to the paper he had in his hand at the place he pointed out, which she did, there is no sufficient acknowledgment

of his signature to the will: In re Simmons' Will, 56 Hun, 642, 9 N. Y. Supp. 352, affirmed without opinion, 124 N. Y. 663, 27 N. E. 413. The exhibition, however, of a will and of the testator's sigaature attached thereto, made by the testator to a witness, and his leclaration to the witness that it was his last will and testament and his request to the witness to attest the same, constitute together a sufficient acknowledgment by the testator of the signature to the will: Baskin v. Baskin, 36 N. Y. 416, 48 Barb. 200 (Parker and Grover, JJ., dissenting); Willis v. Mott, 36 N. Y. 486; Sisters of Charity v. Kelly, 67 N. Y. 409; In re Phillips, 98 N. Y. 267; In re Lang's Will, 9 Misc. Rep. 521, 30 N. Y. Supp. 388; In re Aker's Will, 74 App. Div. 461, 77 N. Y. Supp. 643.

**Request to Witnesses to Sign.**—In some states there must be a request from the testator to the witnesses to sign his will: Mundy v. Mundy, 15 N. J. Eq. 290; In re Williams' Will, 2 Conn. Sur. 579, 15 N. Y. Supp. 828, 64 Hun, 636, 19 N. Y. Supp. 613; Vogel v. Lehritter, 139 N. Y. 223, 34 N. E. 914. ''The object of the statute is that an officious signing by the witnesses, without any privity with the testator, should not be recognized as sufficient'': Peck v. Cary, 27 N. Y. 9, 84 Am. Dec. 220, affirming 38 Barb. 77. The manner and form in which the request must be made, and the evidence by which it must be proved, are not, however, prescribed, and no precise form of words addressed to each of the witnesses at the very time of attestation is required; but any communication importing such request, addressed to one of the witnesses in the presence of the other, and which, by a just construction of all the circumstances, is intended for both, is sufficient. So where one of the subscribing witnesses, in the presence of the other, asked the testator if he wished him to sign or witness the paper as his will, and the testator answered in the affirmative, and both thereupon subscribed the will, the publication is sufficient: Coffin v. Coffin, 23 N. Y. 9, 80 Am. Dec. 235. See, also, In re Kane's Will, 20 N. Y. Supp. 123. Likewise where, before the witnesses signed a will, the draftsman said to the testator, ''Here are M. and H.; do you wish them to act as witnesses to this, your will?'' to which he replied, ''Yes, I do,'' and then subscribed himself, after which the witnesses did, the request is sufficient: In re Menge's Will, 13 Misc. Rep. 553, 35 N. Y. Supp. 493. Moreover, where the words of request are made in the presence of the testator, they may proceed from another than the testator, and will be regarded as those of the testator, although the testator said not one word and did not indicate his acquiescence by act or motion, provided that the circumstances show that he adopted them and that the party speaking them was acting for him with his assent: Bundy v. McKnight, 48 Ind. 502; In re Hull's Will, 117 Iowa, 738, 89 N. W. 979; In re Murphy's Will, 15 Misc. Rep. 208, 37 N. Y. Supp. 223; Cheatham v. Hatcher, 30 Gratt. 56, 32 Am. Rep. 650. So where the person who had drawn up a will for a testator and was attending

to his execution for him, they both being in a bank, called up three persons who were in their hearing to witness the will, which they did, the subscribing by them was done at the testator's request: Peck v. Cary, 27 N. Y. 9, 84 Am. Dec. 220, 38 Barb. 77. Likewise, where counsel who drew a will for a testator and acted as witness with the consent of the testator requested his stenographer to attest as a witness, such request being made in an adjoining room out of the hearing of the testator, after which the witness entered the room where the testator was and signed her name in the testator's presence, nothing further being said to her and no objection being made by the testator, the request to the witness is sufficient: Ames v. Ames, 40 Or. 495, 67 Pac. 737.

In other states, the statutes of wills there prevailing do not require that a testator should ask the witnesses to his will to attest it; his assent, either express or implied, is sufficient; yet the act must be done with his knowledge, and not in a clandestine or fraudulent manner: Higgins v. Carlton, 28 Md. 115, 92 Am. Dec. 666; Etchison v. Etchison, 53 Md. 348; In re Meurer's Will, 44 Wis. 392, 28 Am. Rep. 591.

In yet other states, it is immaterial whether or not the witnesses to a will attested it at the request of the testator: Sandley v. Moss, 114 Ill. App. 612; Dyer v. Dyer, 87 Ind. 13; In re Allen, 25 Minn. 39; Savage v. Bowen, 103 Va. 540, 49 S. E. 668. See, also, Huff v. Huff, 41 Ga. 696, where the court held that the law implies a request from the testator to the witnesses to attest his will from their consummation of the act, that no special request by the testator is necessary to constitute the attesting witnesses competent, that if he does not object his assent is equivalent to a request and satisfies the requirements of the law, and that an instruction that if the jury believed from the evidence that one of the witnesses was suggested to the testator as a witness to his will, and the testator assented to such suggestion, such assent was, in law, a request, or equivalent to a request, is not erroneous.

**Publication, or Declaration of Character of Instrument.**—In some states it is prerequisite to the execution of a will that there be some declaration by the testator to the witnesses that the instrument attested by them is his last will and testament: Cravens v. Faulconer, 28 Mo. 19; Mundy v. Mundy, 15 N. J. Eq. 290; Ludlow v. Ludlow, 36 N. J. Eq. 597; Clark v. Clark, 64 N. J. Eq. 361, 52 Atl. 225; Remsen v. Brinckerhoff, 26 Wend. 325, 37 Am. Dec. 251, affirming Brinckerhoff v. Remsen, 8 Paige, 488; Seymour v. Van Wyck, 6 N. Y. 120; Lewis v. Lewis, 11 N. Y. 220, 13 Barb. 17; Coffin v. Coffin, 23 N. Y. 9, 80 Am. Dec. 235; Baskin v. Baskin, 36 N. Y. 416; Gilbert v. Knox, 52 N. Y. 125; In re Look's Will, 5 N. Y. Supp. 50; In re Look, 54 Hun, 635, 7 N. Y. Supp. 298, judgment affirmed, 125 N. Y. 762, 27 N. E. 408; In re Dale's Will, 56 Hun, 169, 9 N. Y. Supp. 396, affirmed without opinion, 134 N. Y. 614, 32 N. E. 649; In re Williams' Will, 2 Conn. Sur. 579, 15 N. Y. Supp. 828, 64 Hun, 636,

19 N. Y. Supp. 613; Vogel v. Lehritter, 135 N. Y. 223, 34 N. E. 914; In re Carll's Will, 38 Misc. Rep. 471, 77 N. Y. Supp. 1036; In re Moore's Will, 109 App. Div. 762, 96 N. Y. Supp. 729 (requisite in case of olographic wills). Such declaration is what is known in technical language as a publication of a will (Remsen v. Brincker-hoff, 26 Wend. 325, 37 Am. Dec. 251), and without it the will is invalid: Peck v. Cary, 27 N. Y. 9, 84 Am. Dec. 220, affirming 38 Barb. 77. Publication "is important, first, in denoting that the testator knows the nature of the instrument he is executing, and to check any deception upon him. In the second place, and also in order that there may be no imposition perpetrated, it is important that the subscribing witnesses understand that they are attesting the signature to the will of the person at whose request they severally subscribe their names: They realize, if the document is a will, that they are expected to remember what occurred at its execution and be ready to vouch for its validity in court. The declaration of the testator that the instrument is his will is not solely, therefore, for the purpose of showing that he knew that he was executing his will": In re Moore's Will, 109 App. Div. 762, 96 N. Y. Supp. 729. See, also, Baskin v. Baskin, 36 N. Y. 416; Gilbert v. Knox, 52 N. Y. 125.

A substantial compliance with the requirement of publication is not only requisite but sufficient: In re Beckett, 103 N. Y. 167, 8 N. E. 506; In re Dale's Will, 56 Hun, 169, 9 N. Y. Supp. 396, affirmed without opinion, 134 N. Y. 614, 32 N. E. 649. "It is a substantial compliance with the statute, if in some way or mode the testator indicates that the instrument that the witnesses are requested to subscribe as such is intended or understood by him to be his executed will. . . . . The legislature only meant that there should be some communication to the witnesses indicating that the testator intended to give effect to the paper as his will, and that any communication of this idea or to this effect will meet the object of the statute; that it is enough if in some way or mode the testator indicates that the instrument the witnesses are requested to subscribe as such is intended or understood by him to be his will. The word 'declare' is said to signify 'to make known, to assert to others, to show forth'; and this in any manner, either by words or acts, writing or in signs; in fine, that to declare to a witness that the instrument subscribed was the testator's will must mean to make it distinctly known to him by some assertion or by clear assent in words or signs": In re Kane's Will, 20 N. Y. Supp. 123. See, also, Cravens v. Faulconer, 28 Mo. 19; Remsen v. Brinckerhoff, 26 Wend. 325, 37 Am. Dec. 251; In re Murphy's Will, 15 Misc. Rep. 208, 37 N. Y. Supp. 223; In re Carll's Will, 38 Misc. Rep. 471, 77 N. Y. Supp. 1036; In re Moore's Will, 109 App. Div. 762, 96 N. Y. Supp. 729. In Re Beckett, 103 N. Y. 167, 8 N. E. 506, the court further says: "Where the testator cannot speak at all, or only with difficulty, he

may communicate his knowledge by signs or by words to some listeners unintelligible. He must communicate it, however; but if he does that in a manner capable of conveying to the minds of the witnesses his own present consciousness that the paper being executed is a will, that must necessarily be sufficient.'' Likewise in Mundy v. Mundy, 15 N. J. Eq. 290, the court holds that the provision of the New Jersey statute of wills of 1851 that the writing must be declared by the testator to be his last will and testament requires no more formality than the act of 1741 which provided that the will must be published. So where one of the subscribing witnesses in the presence of the other asked the testator if he wished him to sign or witness the paper as his will, and the testator answered in the affirmative, the publication was sufficient as to both witnesses: Coffin v. Coffin, 23 N. Y. 9, 80 Am. Dec. 235. Or, where the draftsman of a will asked the testatrix ''if she wanted B and him to witness the will,'' which then lay before them with the subscription of the testatrix upon it, and she answered in the affirmative, the publication is sufficient: In re Menge's Will, 13 Misc. Rep. 553, 35 N. Y. Supp. 493. To the same effect, In re Murphy's Will, 15 Misc. Rep. 208, 37 N. Y. Supp. 223. And where it was understood by the witnesses to a codicil when they were sent for that it was to witness a codicil, the statement of the testator upon their arrival, ''It lays there on the desk; I have signed it, and there are only two lines left; you sign it on one, and Frank on the other,'' constitutes a sufficient publication: In re Carll's Will, 38 Misc. Rep. 471, 77 N. Y. Supp. 1036. Likewise where the testator knew and the witnesses understood from his acts and conduct, as he intended they should, that the instrument then executed was his will, there is a sufficient publication: Lane v. Lane, 95 N. Y. 494. Moreover, the fact that the testatrix's act of declaration of an instrument as her will included a reference to a previous conversation between her and the attesting witnesses, which reference was of such a character that without it there would be no publication of the will, does not render the publication insufficient: In re Beckett, 103 N. Y. 167, 8 N. E. 506. On the other hand, where the messenger who called a witness told him that he was wanted to subscribe a will, but while he was in the room subscribing it nothing was said to him of the nature of the paper, there is no sufficient declaration that the paper was a will: In re Nevin's Will, 4 Misc. Rep. 22, 24 N. Y. Supp. 838.

Again, it is not necessary that the testator should, by his own words or acts, publish the will, for this in some cases might be impossible through sickness or bodily infirmity, but it may be done by another in his presence and hearing, acting for him with his assent, he being able to dissent but not dissenting: Mundy v. Mundy, 15 N. J. Eq. 290; Ludlow v. Ludlow, 36 N. J. Eq. 597; Gilbert v. Knox, 52 N. Y. 125.

The act of publication is not complete until the witnesses understand from the testator that the instrument they attest is a will: In

re Moore's Will, 109 App. Div. 762, 96 N. Y. Supp. 729. And ''it will not suffice that the witnesses have elsewhere and from some other sources learned that the document which they are called to attest is a will, or that they suspect or infer from the circumstances and occasion that such is the character of the paper. The fact must in some manner, although no particular form of words is required, be declared by the testator in their presence, that they may not only know the fact, but that they may know it from him, and that he understands it, and, at the time of its execution, which includes publication, designs to give effect to it as his will'': Lewis v. Lewis, 11 N. Y. 220, 13 Barb. 17. To the same effect, see Gilbert v. Knox, 52 N. Y. 125.

While olographic wills are not recognized in New York as such, yet where a will is wholly in the testatrix's own handwriting, ''criticism of the terms and manner of what is claimed to have been a sufficient publication need not be so close or severe as where the question whether the testatrix knew that she was executing a will depends solely upon the fact of publication'': In re Beckett, 103 N. Y. 167, 8 N. E. 506. To the same effect, In re Aker's Will, 74 App. Div. 461, 77 N. Y. Supp. 643; In re Moore's Will, 109 App. Div. 762, 96 N. Y. Supp. 729.

In other states no declaration to the witnesses or otherwise of the nature of the document the witnesses are called upon to and actually do witness is requisite, and the fact that its nature and character is unknown to either or all of them does not impair its validity: Appeal of Canada, 47 Conn. 450, holding it error to instruct the jury that it was necessary that the subscribing witness of a will should know that the instrument which he subscribed was a will: Dickie v. Carter, 42 Ill. 376; In re Storey's Will, 20 Ill. App. 183; Robinson v. Brewster, 140 Ill. 649, 33 Am. St. Rep. 265, 30 N. E. 683; Webster v. Yorty, 194 Ill. 408, 62 N. E. 907; In re Barry's Will, 219 Ill. 391, 76 N. E. 577; Brown v. McAlister, 34 Ind. 375; Turner v. Cook, 36 Ind. 129; In re Hulse's Will, 52 Iowa, 662, 3 N. W. 734, holding that a statutory requirement that a will be ''witnessed'' does not require its publication; Ray v. Walton, 2 A. K. Marsh. 71; Flood v. Pragoff, 79 Ky. 607, relating to a codicil; Osborn v. Cook, 11 Cush. 532, 59 Am. Dec. 155, holding that while it was to some extent the usage of courts of probate to inquire of the witnesses to a will whether the testator had declared the instrument to be his will, and while such declaration frequently makes a part of the attestation clause of wills, it is unnecessary; Ela v. Edwards, 16 Gray, 91; Chase v. Kittredge, 11 Allen, 49, 87 Am. Dec. 687; Watson v. Pipes, 32 Miss. 451; Luper v. Werts, 19 Or. 122, 23 Pac. 850; Skinner v. Lewis, 40 Or. 571, 62 Pac. 523, 67 Pac. 951; Loy v. Kennedy, 1 Watts & S. 396; Appeal of Linton, 104 Pa. 228, in case of wills of married women; Dean v. Heirs of Dean, 27 Vt. 746; In re Claflin's Will, 75 Vt. 19, 52 Atl. 1053, 58 L. R. A. 261. Compare, however, In re Claflin's Will, 73 Vt. 129, 87 Am. St. Rep.

693, 50 Atl. 815; Beane v. Yerby, 12 Gratt. 239; Allen v. Griffin, 69 Wis. 529, 35 N. W. 21; overruling In re Downie's Will, 42 Wis. 66. In a few decisions the superfluousness of a declaration of the character of the instrument is explained or excused on the ground that the writing out and signing of the will on paper by the testator constitutes a sufficient publication thereof: Ray v. Walton, 2 A. K. Marsh. 71; Watson v. Pipes, 32 Miss. 451; Dean v. Heirs of Dean, 27 Vt. 746. And in Loy v. Kennedy, 1 Watts & S. 396, the court says: "To require more [in the execution of a will] would frequently do mischief, as a testator is frequently disposed to conceal the fact that the instrument executed is a will."

Where, however, after subscription of a will by a subscribing witness, the testator declares to the witness that it was "a fake will, made for a purpose," his attestation and subscription of the will is invalid: Fleming v. Morrison, 187 Mass. 120, 105 Am. St. Rep. 386, 72 N. E. 499.

Necessity of Signing and Attestation by Witnesses.—In most states it is necessary that the witnesses to a will subscribe and attest the same: See the statutes of the various states. And in Iowa, under a statute requiring a will to be in writing and "witnessed" by two witnesses, the court has held it necessary to the validity of a will that the witnesses should "subscribe" the will. For, as there said by the court, "to say that a writing is witnessed includes, as it seems to us, almost necessarily, the idea that it is witnessed in writing, and to exclude the conclusion that it is witnessed in any other manner. . . . . This is sustained by the thought that the witnesses to a will become such from the time they thus sign it. They testify from that moment, and hence, though they should die before the testator or before the probate of the will, it is still good. . . . . If without anything more than mere memory to identify the instrument, disregarding the consideration that the testator deliberately and formally made his will, desiring and wishing particular persons to attest it in writing, these most solemn of all writings may be established by the recollection of witnesses months and years afterward, immeasurable would be the temptations to frauds and perjuries": In re Boyens' Will, 23 Iowa, 354. In Pennsylvania, however, where the statute of wills requires the signature of the testator to be proved by at least two competent witnesses, neither subscribing nor attesting witnesses are necessary to give validity to a will: Hight v. Wilson, 1 Dall. 94, 1 L. Ed. 51; In re Irvine's Estate, 206 Pa. 1, 55 Atl. 795. And under the custom prevailing in California, before the formation of the state government, to validate a will it was only necessary that the testator and the witnesses should alike hear and understand the testament, and that under such conditions its publication as the will of the testator should be made. It might be drawn in another language from that understood by the testator and witnesses, the notary drawing it understanding both, and the witnesses understanding the language of the

testator: Adams v. Norris, 64 U. S. 353, 16 L. Ed. 539; affirming same case under name of Adams v. De Cook, 1 Fed. Cas. No. 51, McAll. 253.

**Mode of Subscription.**—A witness to a will may sufficiently subscribe a will by making his mark thereon: In re Pope's Will, 139 N. C. 484, 111 Am. St. Rep. 813, 52 S. E. 235; Ford v. Ford, 7 Humph. 92. Moreover, a witness' name may be written thereon by another at his instance and direction, and in his presence: Upchurch v. Upchurch, 16 B. Mon. 102; In re Pope's Will, 139 N. C. 484, 111 Am. St. Rep. 813, 52 S. E. 235; Simmons v. Leonard, 91 Tenn. 183, 30 Am. St. Rep. 875, 18 S. W. 280. For such subscription by another "furnishes as much assurance of identity as the making of a mark. . . . . A literal adherence to the words of the statute would operate harshly, and exclude all persons unable to write their names, as witnesses to wills, however, worthy of credence. A more liberal construction will as effectually accomplish the ends of the statute, and not violate its language": Upchurch v. Upchurch, 16 B. Mon. 102. In North Carolina, it is held that the fact that the witness himself is able to write does not impair the validity of such signature by another (In re Pope's Will, 139 N. C. 484, 111 Am. St. Rep. 813, 52 S. E. 235); but in Tennessee, it is held that where the witness' name is written by another, the witness himself must countersign it with his mark or other identifying sign, and further, that a competent witness cannot effectively procure his signature to be made thereon by one incompetent to have himself been a witness to a will, for "to permit the devisee to write the name of the subscribing witness would expose the will to little less danger of wrongful alteration and substitution than would exist if the devisee himself were allowed to become the witness; the same evil consequences would follow in the one case as in the other. If he may sign the name of one subscribing witness, he may sign the name of both, and in that way become a more potent factor in the execution and probate of the will than if he were allowed to become a subscribing witness himself. He may not lawfully take the matter so largely into his own hands. A proper construction of the statute excludes the devisee from the doing of any act, even for the subscribing witness, which is essential to a valid subscription": Simmons v. Leonard, 91 Tenn. 183, 30 Am. St. Rep. 875, 18 S. W. 280.

In Re Walker, 110 Cal. 387, 52 Am. St. Rep. 104, 42 Pac. 815, 30 L. R. A. 460 (McFarland, Garoutte, and Van Fleet, JJ., dissenting), the court held that a witness could sign only in one way, viz., by affixing his name; and, accordingly, that where a witness, inadvertently signed his name as "C. G. Walker," instead of "C. G. Warren," the will was invalidated.

**Place on Will of Subscription.**—In the absence of an express statutory requirement that the witnesses attach their signatures at the foot or end of the will, it is immaterial upon what part of a will the attesting witnesses sign their names; all that is necessary is

that the witnesses sign their names upon the paper upon which the will is written. So the fact that two provisions of a will were written after the attestation clause and signatures of the witnesses does not impair its validity: Kolowski v. Fausz, 103 Ill. App. 528; Fowler v. Stagner, 55 Tex. 393, where the clause appointing executors was appended after the place left for the signatures of the subscribing witnesses, and they signed after the writing of the whole and with the intention of attesting the whole will, the part after their signatures as well as that before. Likewise it is of no importance that the witnesses sign their names in the attestation clause of the will, and not after: Franks v. Chapman, 64 Tex. 159. And where, at the conclusion of a will, after the testator's signature, was written a statement by the testator's wife, in substance that she was satisfied with it, and agreed to its provisions, and a subscribing witness to the will signed his name after the above addendum, instead of after the will itself, that fact does not invalidate the will: Potts v. Felton, 70 Ind. 166. Also where one of the witnesses to a will signed a sworn certificate on the back thereof, stating in substance that on the date of the will the testator signed, sealed and delivered it for the consideration and purposes stated therein, as his own proper act and deed, the attestation of such witness is sufficient: Murray v. Murphy, 39 Miss. 214.

In states, however, where it is requisite that the witnesses sign the will at the foot or end thereof, or that they "subscribe" it, a more rigid rule is applicable. Where a will occupied the first and part of the second page of a four-page sheet of paper, and, after being signed, was folded with the fourth page outside and sealed, and was later presented by the testator to three persons to be by them witnessed as his will, there is no sufficient subscribing of the will by the witnesses: Soward v. Soward, 1 Duvall, 126. For "between the paper as subscribed by Soward [the testator], and the names of the witnesses, there is an intervening space of nearly two blank pages. So far from subscribing their names to the will, it may be said, with much more propriety and accuracy of speech, that they merely indorsed the paper enclosing and enveloping the will, without any accompanying writing or memorandum to indicate the purpose of the indorsement or showing any connection whatever between the indorsement and the will. If the paper had been inclosed in a sealed envelope, and the witnesses had written their names on the envelope, it would have been quite as near an approximation to the requirements of the statute. There would also have been just as little room to doubt the identity of the paper in the one case as in the other. And whilst it is true that one of the chief objects of requiring the subscription of the names of the witnesses is to insure identity, it is equally true that another object is to prevent fraudulent additions to or alterations of the instrument to be subscribed. But the mode in which these objects are to be attained is definitely and certainly prescribed by the law, and it admits the substitution of no other mode."

Moreover, where, after a testator's will was written, he caused another paragraph to be written at the end, which clause was of a testamentary character; and he signed both at the end of the original will, and after the new paragraph, but the witnesses signed only at the end of the original will, they failed to subscribe the will, and the will is invalid: In re Blair's Will, 84 Hun, 581, 32 N. Y. Supp. 845. And where a will was written on the first and third pages of a double sheet of paper, and at the foot of the first page were the words "continued on the next page," followed by an attestation clause and the signatures of the testator and three subscribing witnesses, and it further appeared from the terms of the will that the matter on the third page was surplusage, yet the will, not being signed by the witnesses at the end of the whole writing, is invalid. The testator intended the clauses on the third page to be part of his will, and it was not completed to his satisfaction until they were added. What shall form part of the instrument which the testator intends as his will must be determined by him: In re Albert's Will, 38 Misc. Rep. 61, 76 N. Y. Supp. 965.

**Time of Subscription and Attestation.**—It is not necessary, in most states, that both or all the witnesses to a will should subscribe it at the same time, but a will attested by a sufficient number of witnesses, who at different times subscribe their names as witnesses, is well executed: Johnson v. Johnson, 106 Ind. 475, 55 Am. Rep. 762, 7 N. E. 201; Grubbs v. Marshall (Ky.), 13 S. W. 447; Dewey v. Dewey, 1 Met. 349, 35 Am. Dec. 367; Cravens v. Faulconer, 28 Mo. 19; Eelbeck's Devisees v. Granberry, 3 N. C. 232. In Virginia, however, the witnesses to a will must attest at the same time, for otherwise "the testator might be capable of making a will at the time of one of the attestations, and incapable at the time of the other, and only one attesting witness could prove the important fact of mental capacity at either time": Parramore v. Taylor, 11 Gratt. 220.

**Presence of Testator—Necessity and Purpose.**—It is prerequisite to the validity of a will that both or all the witnesses thereto subscribe and attest the same in the presence of the testator: Standley v. Moss, 114 Ill. App. 612; Calkins v. Calkins, 216 Ill. 458, 108 Am. St. Rep. 233, 75 N. E. 182, 1 L. R. A., N. S., 293; Cravens v. Faulconer, 28 Mo. 19; In re Beggans' Will, 68 N. J. Eq. 572, 59 Atl. 874; Eelbeck's Devisees v. Granberry, 3 N. C. 232; In re Pope's Will, 139 N. C. 484, 111 Am. St. Rep. 813, 52 S. E. 235; Town of Pawtucket v. Ballou, 15 R. I. 58, 2 Am. St. Rep. 868, 23 Atl. 43. An instruction that a will to be valid must be attested in the "personal and actual" presence of the testator, is not objectionable, although the adjectives are unnecessary, as, if attested in his presence, it cannot otherwise than in his "personal and actual" presence: Greene v. Greene, 145 Ill. 264, 33 N. E. 941.

"The object of the statute in requiring that a will should be 'attested by the witnesses in the presence of the testator,' so far as the

form of the attestation is concerned, was to identify the instrument as that signed and published by the testator, and to prevent fraud and imposition in establishing spurious wills, and, at the same time, to show the person by whom the facts necessary to establish the will could be proved, when it should be produced for probate": Fatheree v. Lawrence, 33 Misc. Rep. 585. To the same effect, see Robinson v. King, 6 Ga. 639; Calkins v. Calkins, 216 Ill. 458, 108 Am. St. Rep. 233, 75 N. E. 182, 1 L. R. A., N. S., 393; Arndorff v. Hummer, 12 B. Mon. 619; Watson v. Pipes, 32 Miss. 451; Crovens v. Faulconer, 28 Mo. 19; Mandeville v. Parker, 31 N. J. Eq. 242. A further object it said to be that the testator may know that the instrument has been witnessed by the persons whom he has chosen for that purpose: Orndorff v. Hummer, 12 B. Mon. 619.

Presence Mentally.—From the standpoint of a testator as a rational being, the performance of the act of subscription and attestation in his presence necessarily involves his full consciousness at the time of such performance of the nature and quality of the act: Watson v. Pipes, 32 Miss. 451; Nock v. Nock's Exrs., 10 Gratt. 106. For "when the condition of the testator is such that immediately after the acknowledgment and before the subscription of the will, from sleep or other cause, he becomes insensible to what is passing around him, and unconscious of the act of subscribing, which he has a right to supervise, and thus in fact is unable to determine whether he will or will not supervise it, the subscription thus made is not in the sense or within the objects of the statute made in his presence. . . . . Although, as far as mere space were concerned, the subscription was in his presence, we are satisfied that the same reasons which require that he should have been physically capable by his own exertion or by the aid of others to see what was going on if he chose to do so, operate even more powerfully to require that he should have been conscious of it, and that he should have had the will or mental power to determine whether he would or would not see it. If this be not requisite, the subscription by the witnesses would be sufficient, though made after the death of the testator, or after he had relapsed into perfect delirium, or had become wholly insensible to external objects from the near approach of death. And if this were sufficient, the objects of the statute would be as fully accomplished if the will were subscribed a year from the testator's death, or at any distance from his presence during his life": Orndorff v. Hummer, 12 B. Mon. 619. So where at the time of subscription the testator was in bed and did not speak to the witness while he was in the room, nor did the witness see him, and while both before and after the subscription the testator was able to converse and walk about, but it did not appear that he was sensible or awake at the time thereof, the subscription is insufficient: Griffith's Exr. v. Griffith, 5 B. Mon. 511. Where the feebleness of mind and body of a testator at the time of attestation of his will was so great that there was a total prostra-

tion of bodily and mental powers, the will is void: Spoonemore v. Cables, 66 Mo. 579. And where a testator declared an instrument to be his will and requested the witnesses to sign, but before the second witness had signed died, and he afterward subscribed, the will is invalid: In re Fish's Will, 88 Hun, 56, 34 N. Y. Supp. 536. In Mc-Mechen v. McMechen, 17 W. Va. 683, 41 Am. Rep. 682, the court in substance says: If before the attestation of a will, and while it is being done, the testator, by reason either of unconsciousness or physical inability, was unable to dissent from the attestation and to arrest or prevent the same by indicating his dissent or disapproval, if he had desired to do so, the will is not valid. It is not necessary that the testator shall actually assent to the attestation, but when the attestation is made he must be in a mental and physicial condition which will enable him to dissent from the attestation if he desires; and if his condition is such that he could give such dissent or disapproval, if he chose to do so, but does not, his assent will be implied.

In Ambre v. Weishaar, 74 Ill. 109, it has further been held that an attestation, even in the same room with the testator, if done in a clandestine and fraudulent manner, will not be regarded as done in his presence.

**Presence Physically.**—From the standpoint of the testator as a sentient creature, there must be such contiguity between the testator and the witnesses at the time of their attestation as in fact or in the common experience of men will bring the act of the witnesses in subscribing and attesting to the perception of the testator's senses. In Healey v. Bartlett, 73 N. H. 110, 59 Atl. 617, the court says: "When a testator is not prevented by physical infirmities from seeing and hearing what goes on around him, it is the general, if not the universal, rule, that his will is attested in his presence if he understands and is conscious of what the witnesses are doing when they write their names, and can, if he is so disposed, readily change his position so that he can see and hear what they do and say. . . . . In other words, if he had knowledge of their presence, and can, if he is so disposed, readily see them write their names, the will is attested in his presence, even if he does not see them do it, and could not without some slight physical exertion. It is not necessary that he should actually see the witnesses for them to be in his presence. They are in his presence whenever they are so near him that he is conscious of where they are, and of what they are doing, through any of his senses, and are where he can readily see them if he is so disposed. The test, therefore, to determine whether the will of a person who has the use of all his faculties is attested in his presence, is to inquire whether he understood what the witnesses were doing when they affixed their names to his will, and could, if he had been so disposed, readily have seen them do it."

In view of the tendency, observable in the foregoing and many other decisions, to confuse presence with eyesight, the court, in May-

nard v. Vinton, 59 Mich. 139, 60 Am. Rep. 276, 26 N. W. 401, says: "Courts have held that where the testator is a blind person, still the witnesses must subscribe in such position and proximity that, had the testator been possessed of eyesight, he would have seen them; thus making the test of sight the limit of personal presence. If this is the correct criterion, then the rule, instead of being uniform, would be subject to great fluctuations, according to the degree of eyesight a person has. What would be in the presence of a far-sighted person would be in the absence of a near-sighted one; and what would be a valid execution of a will for one would be wholly worthless for another with equal mental capacity; and a person wearing his eyeglasses or spectacles would have a larger presence than when he laid them aside. Under such a rule, the oculist would appear to be the most important witness to establish or destroy the legal attestation and execution of a will. . . . . I confess I do not see why the word 'presence' should not be held to convey the idea attached to its ordinary signification in the ordinary use of language. It is not a technical term or scientific word. Why should such a meaning be put upon this word 'presence' that implies that every person who is called upon to witness the execution of a will is presumed to be willing and anxious to foist upon the testator a spurious document, and hence required to write his name under the eye (if he has one) of the testator.''

Other decisions, while recognizing that an attestation may be good although the testator is blind or does not choose to look at the act of attesting, yet hold that to be in the testator's presence the act of attesting must be in the line of the testator's vision if he could or cared to look. In Calkins v. Calkins, 216 Ill. 458, 108 Am. St. Rep. 233, 75 N. E. 182, 1 L. R. A., N. S., 393, the court says: "In the case of a blind person, his will would be attested in his presence if the act was brought within his personal knowledge through the medium of other senses. . . . . On the other hand, no mere contiguity of the witnesses will constitute presence if the position of the testator is such that he cannot possibly see them. An attestation is not in the presence of the testator, although the witnesses are in the same room and close to him, if some material obstacle prevents him from knowing of his own knowledge or perceiving by his senses the act of attestation. To the same effect, In re Tobin, 196 Ill. 484, 63 N. E. 1021; Riggs v. Riggs, 135 Mass. 238, 46 Am. Rep. 464; Reynolds v. Reynolds, 1 Spear, 253, 40 Am. Dec. 599. The necessity, in case of a blind testator, that the act of attesting should be within the perception of his remaining senses does not appear to be appreciated in the remarks in Healey v. Bartlett, 73 N. H. 110, 59 Atl. 617, in respect to the wills of blind testators. In Ray v. Hill, 3 Strob. 297, 49 Am. Dec. 647, the will of a blind man was sustained, the will having been within two feet of the testator at the time the witnesses subscribed their names, and the court said: "In the case of a blind man, the

superintending control which in other cases is exercised by sight must be transferred to the other senses; and if they are, or may, at his discretion, be made sensible that the witnesses are subscribing the same will that he had signed, I should think it ought to suffice.''

Presence in Case of Clear Vision.—Where a testator is so situated with respect to the witnesses to his will that by a mere movement of his head, which he had the physical ability to make if he chose, they would be in his unobstructed sight during the act of attestation, they are sufficiently in his presence, though he fails to overlook their act of attestation: Robinson v. King, 6 Ga. 539; Ambre v. Weishaar, 74 Ill. 109; In re Storey's Will, 20 Ill. App. 183, 200; McElfresh v. Guard, 32 Ind. 408; Turner v. Cook, 36 Ind. 129; Orndorff v. Hummer, 12 B. Mon. 619; Edelen v. Hardley's Lessee, 7 Har. & J. 61, 16 Am. Dec. 292; Dewey v. Dewey, 1 Met. (Mass.) 349, 35 Am. Dec. 367; Hogan v. Grosvenor, 10 Met. (Mass.) 54, 43 Am. Dec. 414; In re Allen, 25 Minn. 39; Watson v. Pipes, 32 Miss. 451; Walker v. Walker, 67 Miss. 529, 7 South. 491; Spooncmore v. Cables, 66 Mo. 579; Cornelius v. Cornelius, 52 N. C. 593; Blanchard's Heirs v. Blanchard's Heirs, 32 Vt. 62; Ray v. Hill, 3 Strob. 297, 49 Am. Dec. 647. This rule ap-plies equally where the witnesses were not in the same room with the testator: Orndorff v. Hummer, 12 B. Mon. 619; Bynum v. Bynum, 33 N. C. 632; In re Meurer's Will, 44 Wis. 392, 28 Am. Rep. 591. If actual sight were necessary, it would vitiate a will if the testator did but turn his back or look off, though literally present by being at the spot where the thing was done: Bynum v. Bynum, 33 N. C. 632.

Presence in Case of Obstructed Vision.—Where, however, the testator and witnesses are in the same apartment and fairly contiguous, but some physical object obstructing the sight lies between them dur-ing the act of subscribing, the witnesses are not in the testator's presence, and the attestation is insufficient, although the testator was physically capable of changing his position or removing the obstruction had he chose to do so: Robinson v. King, 6 Ga. 539; Brooks v. Duffell, 23 Ga. 441; Reed v. Roberts, 26 Ga. 294, 71 Am. Dec. 210; Calkins v. Calkins, 216 Ill. 458, 108 Am. St. Rep. 233, 75 N. E. 182, 1 L. R. A., N. S., 293; Ray v. Hill, 3 Strob. 297, 49 Am. Dec. 647. Yet in Michigan, where the sight was interrupted by the fact that the first witness stood between the testator and the second witness while the second was subscribing, the attestation was not thereby invalidated: Maynard v. Vinton, 59 Mich. 139, 60 Am. Rep. 276, 26 N. W. 401. And the fact that, while subscribing, a witness is so placed with respect to the testator that the witness' body cuts off the testator's view of the will, the hand of the witness with which he was subscribing, and the act of subscription, does not render the attestation any the less in the presence of the testator: In re Tobin, 196 Ill. 484, 63 N. E. 1021; Nock v. Nock's Exrs., 10 Gratt. 106; Baldwin v. Baldwin's Exr., 81 Va. 405, 59 Am. Rep. 669.

Presence in Case of Inability to Look in Direction.—In some decisions it is held that where the testator's ability actually to see the witnesses to his will subscribe the same is dependent upon his ability to turn himself, and his ailment so operates as to prevent him from making this movement, the will is not witnessed in his presence: Aikin v. Weckerly, 19 Mich. 482; Watson v. Pipes, 32 Miss. 451; Walker v. Walker, 67 Miss. 529, 7 South. 491; Neil v. Neil, 1 Leigh, 6, the court being equally divided. But in Riggs v. Riggs, 135 Mass. 238, 46 Am. Rep. 464, the court held that where a will was attested nine feet from a testator's bed in an adjoining room, and in the unobstructed line of vision from his bed, but because of injuries he was unable to turn his head or to look in any direction except upward, it is attested in his presence, for sight is not the only test of presence. ''A man may take note of the presence of another by the other senses, as hearing or touch. Certainly, if two blind men are in the same room, talking together, they are in each other's presence. If two men are in the same room, conversing together, and either or both bandage or close their eyes, they do not cease to be in each other's presence.''

Position in Same or Another Room—Presumption Therefrom.—In order that the attestation may be in the presence of the witnesses, it is not indispensable that the witnesses should, at the time of their subscription, be in the same room or even in the same house as the testator: Robinson v. King, 6 Ga. 539; Ambre v. Weishaar, 74 Ill. 109; McElfresh v. Guard, 32 Ind. 408; Watson v. Pipes, 32 Miss. 451. Yet where the witnesses subscribe in a different room from that in which the testator is and out of the line of his vision, they are not in his presence: Robinson v. King, 6 Ga. 539, where the witnesses went onto the piazza to subscribe; Edelen v. Hardley's Lessee, 7 Har. & J. 61, 16 Am. Dec. 292; Boldry v. Parris, 2 Cush. 433; Mandeville v. Parker, 31 N. J. Eq. 242, where the will was on a table, behind the partition of the adjoining room, although the backs of the witnesses sitting at the table and subscribing their names might have been visible from the position of the testator; Graham v. Graham, 32 N. C. 219, under same circumstances; Jones v. Tuck, 48 N. C. 202; Reynolds v. Reynolds, 1 Spear, 253, 40 Am. Dec. 599, where a testator in bed could have seen, by raising himself on his elbow, which he had the strength to do, but did not. In Wright v. Lewis, 5 Rich. 1, 212, 55 Am. Dec. 714, where a testator, being in ordinary health, walked on to a piazza to subscribe his will and sat down at a table and did it, and then rose and let the witnesses sit there to sign, meanwhile walking into the room off the piazza from parts of which he could see the witnesses sign, and after the attestation was done was found by the witnesses sitting in a place in the room from which he could not have seen the witnesses when subscribing, the court held the attestation sufficiently in the testator's presence, and distinguished the case from the others on the ground that in them the will

was taken from the actual presence of the testator to be attested, while here the will remained exactly where the testator signed it, and he left the witnesses when he knew they were attesting it.

Moreover, in a number of decisions it is held that where the witnesses are in the same room with the testator at the time of the act of subscribing, they are prima facie in his presence, and the burden is on a contestant of the will to rebut that presumption, while if they are not all in the same room at that time, they are prima facie out of the presence of the testator, and the burden is on the proponent of the will to establish their mutual presence: Orndorff v. Hummer, 12 B. Mon. 619; Watson v. Pipes, 32 Miss. 451; Mandeville v. Parker, 31 N. J. Eq. 242; In re Beggan's Will, 68 N. J. Eq. 572, 59 Atl. 874; Bynum v. Bynum, 33 N. C. 632; Jones v. Turk, 48 N. C. 202.

**Acknowledgment of Signature as Equivalent to Presence.**—In some states, where the witnesses to a will subscribed the same out of the presence of the testator, their subsequent acknowledgment of the signatures to the testator, although done as part of the same transaction, the signatures being exhibited to the testator, does not amount to subscription in the testator's presence and is insufficient to validate the will: Calkins v. Calkins, 216 Ill. 458, 108 Am. St. Rep. 223, 75 N. E. 182, 1 L. R. A., N. S., 393; Chase v. Kittredge, 11 Allen, 49, 87 Am. Dec. 687; Town of Pawtucket v. Ballou, 15 R. I. 58, 2 Am. St. Rep. 868, 23 Atl. 43; In re Downie's Will, 42 Wis. 66. In other states, however, the subscription and attestation is in such case, under the circumstances mentioned, sufficiently done in the testator's presence: Cook v. Winchester, 81 Mich. 581, 46 N. W. 106, 8 L. R. A. 822; Moore v. Moore's Exr., 8 Gratt. 307, the court being equally divided; Sturdivant v. Birchett, 10 Gratt. 67 (Daniel and Allen, JJ., dissenting).

**Mutual Presence of Witnesses.**—In most states, it is not requisite that the witnesses to a will sign or attest the same in the presence of each other or of one another, but it is sufficient that they do so separately: Moore v. Spier, 80 Ala. 129; Appeal of Gaylord, 43 Conn. 82; Flinn v. Owen, 58 Ill. 111; In re Hull's Will, 177 Iowa, 738, 89 N. W. 979; Hogan v. Grosvenor, 10 Met. (Mass.) 54, 43 Am. Dec. 414; Ela v. Edwards, 16 Gray, 91; Cravens v. Faulconer, 28 Mo. 19; Hoysradt v. Kingman, 22 N. Y. 372; In re Potter's Will, 12 N. Y. Supp. 105; In re Diefenthaler's Will, 39 Misc. Rep. 765, 80 N. Y. Supp. 1121; Raudebaugh v. Shelley, 6 Ohio St. 307; Logue v. Stanton, 5 Sneed, 97; Simmons v. Leonard, 91 Tenn. 183, 30 Am. St. Rep. 875, 18 S. W. 280; Parramore v. Taylor, 11 Gratt. 220; Beane v. Yerby, 12 Gratt. 239; Green v. Crain, 12 Gratt. 252 (Allen, P., and Daniel, J., dissenting, by reason of peculiar statutory language); In re Smith's Will, 52 Wis. 543, 38 Am. Rep. 756, 8 N. W. 616, 9 N. W. 665. "A requisition that the witnesses shall subscribe in the presence of each other would be a fruitful source of litigation, would

defeat many fair wills, and would, I think, be productive of no corresponding good. It would very much clog the exercise of the testamentary power, without throwing around it, so far as I can perceive, a single additional safeguard. It would render it necessary to inquire in every case whether the witnesses, when they subscribed the will, were not only in the presence of the testator or in the range of his vision, but also in the presence of each other or in the range of each other's vision. It would be questionable whether range of the vision would be sufficient in regard to the witnesses inter se, and whether actual sight would not be necessary'': Paramore v. Taylor, 11 Gratt. 220.

In a few states, however, the witnesses must be together in each other's or one another's presence at the time of their subscription and attestation of the will, to validate the same: Ludlow v. Ludlow, 36 N. J. Eq. 597; Roberts v. Welch, 46 Vt. 164. In these latter states, where all the witnesses to a will were so situated that they might have seen one another sign, it is not material whether they did in fact or not: Blanchard's Heirs v. Blanchard's Heirs, 32 Vt. 62; In re Claflin's Will, 73 Vt. 129, 87 Am. St. Rep. 693, 50 Atl. 815. But to constitute presence, it is not sufficient that the witnesses merely were in the same room with the testator. The room might have been so large; but the witnesses must have been together in the presence of one another in such a way and in such a sense that they could see one another sign; whether they actually looked and saw or not, they must have been right where they could have seen one another sign: In re Claflin's Will, 75 Vt. 19, 52 Atl. 1053, 58 L. R. A. 261.

**Knowledge of Contents by Witnesses.**—It is not essential to the validity of a will that it should be read over to the witnesses thereto, nor that they should know its contents: Dickie v. Carter, 42 Ill. 376; Brown v. McAlister, 34 Ind. 375; In re Higdon's Will, 6 J. J. Marsh, 444, 22 Am. Dec. 84; Flood v. Pragoff, 79 Ky. 607; Hogan v. Grosvenor, 10 Met. (Mass.) 64, 43 Am. Dec. 414; Osborn v. Cook, 11 Cush. 532, 59 Am. Dec. 155; Raudebaugh v. Shelley, 6 Ohio St. 307; Luper v. Werts, 19 Or. 122, 23 Pac. 850; Skinner v. Lewis, 40 Or. 571, 62 Pac. 523, 67 Pac. 951; Appeal of Linton, 104 Pa. 228, relating to a will of a married woman; Simmons v. Leonard, 91 Tenn. 183, 30 Am. St. Rep. 875, 18 S. W. 280.

In order to validate his attestation to a will, a witness thereto need not know the testamentary capacity of the testator: Huff v. Huff, 41 Ga. 696. It is error to instruct the jury that prior to the signing of a will by the witnesses thereto, each of the witnesses must know that the other was to be an attesting witness, and each must know that the other had been requested to act in that capacity: Savage v. Bowen, 103 Va. 540, 49 S. E. 668.

It is not requisite to the validity of a will that the witnesses thereto attest to exactly the same act or declaration on the part of

the testator, indicating his acknowledgment of the instrument: In re Hull's Will, 117 Iowa, 738, 89 N. W. 979.

**Attestation Clause.**—Where it is customary to place at the end of a will, before the signatures of the witnesses thereto, an attestation clause setting forth with more or less completeness the performance of the statutory requisites to its due execution and witnessing, yet the total absence of such clause, or of any word of attestation, does not invalidate the will: Calkins v. Calkins, 216 Ill. 458, 108 Am. St. Rep. 233, 75 N. E. 182, 1 L. R. A., N. S., 393; In re Barry's Will, 219 Ill. 391, 76 N. E. 577; Barricklow v. Stewart, 163 Ind. 438, 72 N. E. 128; In re Hull's Will, 117 Iowa, 738, 89 N. W. 979; Ela v. Edwards, 16 Gray, 91; Berberet v. Berberet, 131 Mo. 399, 52 Am. St. Rep. 634, 33 S. W. 61; Williams v. Miles, 68 Neb. 463, 110 Am. St. Rep. 431, 94 N. W. 705, 96 N. W. 151; In re Look, 54 Hun, 635, 7 N. W. Supp. 298; affirmed without opinion, 125 N. Y. 762, 27 N. E. 408; In re Aker's Will, 74 App. Div. 461, 77 N. Y. Supp. 643; In re Cornell's Will, 89 App. Div. 412, 85 N. Y. Supp. 920; Webb v. Dye, 18 W. Va. 376. Where such a clause is used, the particular form of completeness thereof is immaterial to the validity of the will: Keely v. Moore, 196 U. S. 38, 25 Sup. Ct. 169, 49 L. Ed. 376, affirming 22 App. Dist. Col. 9; Robinson v. Brewster, 140 Ill. 649, 33 Am. St. Rep. 265, 30 N. E. 638; Barricklow v. Stewart, 163 Ind. 438, 72 N. E. 128; In re Hull's Will, 117 Iowa, 738, 89 N. W. 979; Osborn v. Cook, 11 Cush. 532, 59 Am. Dec. 155; Chase v. Kittredge, 11 Allen, 49, 89 Am. Dec. 687; Fatheree v. Lawrence, 33 Miss. 585, Chaffee v. Baptist Missionary Convention, 10 Paige, 85, 40 Am. Dec. 225; Jackson v. Jackson, 39 N. Y. 163; Franks v. Chapman, 64 Tex. 159. The same rules hold true with respect to an attestation clause to a codicil: In re Crane, 68 App. Div. 355, 74 N. Y. Supp. 88.

So where the attestation clause of a will consisted merely of the word "witness" (Osborn v. Cook, 11 Cush. 532, 59 Am. Dec. 155; Chase v. Kittredge, 11 Allen, 49, 87 App. Div. 687; In re Aker's Will, 74 App. Div. 461, 77 N. Y. Supp. 643), or "attest" (Robinson v. Brewster, 140 Ill. 649, 33 Am. St. Rep. 265, 30 N. E. 683), or "test" (Fatheree v. Lawrence, 33 Miss. 585), written before the names of the witnesses, it is sufficient. Where at the end of a will, below the testator's subscription were subscribed the phrases "Written by S. S. Ashton," and "Witness Anna R. Ashton," and it appeared that the first witness was the draftsman of the will and wrote the words "Written by S. S. Ashton for" on the will, intending to add the testatrix's name in case she was unable to write her own, but the testatrix, being able to write it, scratched out the word "for" and left the remainder as a subscription and attestation of the will, it is sufficient: Pollock v. Glassel, 2 Gratt. 439. An attestation clause in the form of a formal certificate of acknowledgment of the testator's signature, the witness being one authorized to take acknowledgments, has also been sustained: In re Hull's Will, 117 Iowa, 738,

89 N. W. 979; Franks v. Chapman, 64 Tex. 159. Likewise an attestation clause stating in substance that on the date of the will the testator signed, sealed and delivered it for the consideration and purposes stated therein as his own proper act and deed does not invalidate the attestation, as such superfluous language cannot invalidate the witness' signature thereto: Murray v. Murphy, 39 Miss. 214. Furthermore, the use of one clause in one form signed by two witnesses, and of another clause in another form signed by the third, does not (three witnesses being necessary) render the attestation of the will insufficient: Keeley v. Moore, 196 U. S. 38, 25 Sup. Ct. 169, 49 L. Ed. 376, affirming 22 App. Dist. Col. 9.

But in the early case of Withinton v. Withinton, 7 Mo. 589, where a paper offered as a will was in form a deed to take effect at the grantor's death, and had attached to it a certificate of a notary, wherein the notary acknowledged his signature and his act, and that he did it for the purposes in the writing set forth, which certificate was signed by the notary, the court held that the notary's signature cannot, for the purpose of sustaining the writing as a will, be considered the signature of an attesting witness, since the function of a witness to a will is not only to prove that the instrument was executed, but that the testator was of sound and disposing mind, while here the notary certified merely to the due execution and not to the mental capacity of the grantor.

**Order of Execution by Testator and by Witness.**—While the general and regular course in the attestation of a will is for the testator first to execute the will on his part and then call on the witnesses to attest the execution by subscribing their names (O'Brien v. Gallagher, 25 Conn. 229), yet in some states the fact that one or more of the witnesses subscribe their names before the testator signs or acknowledges the will does not, where the testator afterward, as part of the same transaction and in the continued presence of the witnesses, himself signs or acknowledges it, invalidate the will: O'Brien v. Gallagher, 25 Conn. 229; Swift v. Wiley, 1 B. Mon. 114; Sechrest v. Edwards, 4 Met. (Ky.) 163; Cutler v. Cutler, 130 N. C. 1, 89 Am. St. Rep. 854, 40 S. E. 689, 57 L. R. A. 209; Rosser v. Franklin, 6 Gratt. 1, 52 Am. Dec. 97; Parramore v. Taylor, 11 Gratt. 220; Beane v. Yerby, 12 Gratt. 239. Compare, however, Chisholm's Heirs v. Ben, 7 B. Mon. 408. In Swift v. Wiley, 1 B. Mon. 114, the court said: ''As all three of the subscribing witnesses were present at the final publication of the will, attested the fact of signing and publishing by the testator, and either then subscribed or acknowledged the subscription of their respective names, on the same paper, so as to insure the identification of the will as then published and attested, every purpose of the statute has been fulfilled, and not even a letter of it violated or disregarded. To resubscribe the names . . . . would have been a superfluous and puerile act of mechanical repetition, not necessary for identification; because they had once sub-

scribed the same paper in the presence and at the request of the testator, and which fact was recognized by him, as well as by themselves, after his own name had been subscribed, and when the document, thus recognized and identified, was finally and conclusively published as his will; nor can we perceive any other end of either utility or security that could have been promoted by again subscribing names already sufficiently subscribed."

Moreover, in Grigg v. Williams, 51 N. C. 518, the court held that where after one of the witnesses to a will had subscribed his name the testator inserted the name of an additional executor as part of the same transaction, the attestation by such witness was good.

In other states, however, where one or more of the necessary witnesses to a will subscribes it before the testator subscribes or acknowledges the same to the witnesses, the attestation of the will is insufficient, although the testator afterward, as part of the same transaction, signs or acknowledges the will: Duffie v. Corridon, 40 Ga. 122, where the testator signed the next day in the presence of the witness who had signed the previous day; Brooks v. Woodson, 87 Ga. 379, 13 S. E. 712, 14 L. R. A. 160; Chase v. Kittredge, 11 Allen, 49, 87 Am. Dec. 687, where one of the witness signed in the absence of and before the testator, and the witness afterward acknowledged his signature to the testator after the testator had signed in his presence; Lacey v. Dobbs, 63 N. J. Eq. 325, 92 Am. St. Rep. 667, 50 Atl. 497, 55 L. R. A. 580, overruling Mundy v. Mundy, 15 N. J. Eq. 290, to the contrary; Baskin v. Baskin, 36 N. Y. 416; Jackson v. Jackson, 39 N. Y. 153; Sisters of Charity v. Kelly, 67 N. Y. 409; In re Williams' Will, 2 Conn. Sur. 579, 15 N. Y. Supp. 828, judgment affirmed, 64 Hun, 636, 19 N. Y. Supp. 613; Simmons v. Leonard, 91 Tenn. 183, 30 Am. St. Rep. 875, 18 S. W. 280. See, also, In re Irvine's Estate, 206 Pa. 1, 55 Atl. 795, holding that the Pennsylvania statute of 1855 governing the execution of a will disposing of property to charitable or religious uses, presupposes the existence of a writing signed by the testator at the time of attestation. In support of this doctrine, the court in Brooks v. Woodson, 87 Ga. 379, 13 S. E. 712, 14 L. R. A. 160, declared that the signature of the testator is the principal, if not the only, matter to which the attestation applies, and such being the case, the attestation is insufficient if made a moment before the signing by the testator, as well as though made a day before. "To witness a future event is equally impossible, whether it occur the next moment or the next week." And in Jackson v. Jackson, 39 N. Y. 153, the courts says: "Their signatures do not attest the signing by the testator, if they are placed there before the will is signed by him. For some period, longer or shorter, as the case may be, those signatures attest no execution— they certify what is not true. . . . . Execution and the attestation thereof bear a plain relation to each other in point of time, in the good sense and common apprehension of everyone, and the statute prescribing the requisite formalities to a valid execution and authen-

tication plainly contemplates that the acts of the witnesses shall attest the signing and declaration of the testator as a fact accomplished.''

Similarly in Reed v. Watson, 27 Ind. 443, where a testator procured the signature of a witness to his will before he signed it, and then took the will away with him and afterward attached his own signature without the knowledge of such witness, the court held the attestation insufficient.

In Re Phillips, 98 N. Y. 267, the court, however, held that the statute of wills is complied with, if the declaration that the instrument is a will and the acknowledgment of the testator's signature are simultaneous with the signature of the subscribing witness, especially if these acts are done before the witness has completed his signature and all on the same occasion.

**Order of Publication and Other Requisites.**—It is sufficient in those states where publication is essential to the validity of a will that it be done as part of the transaction of witnessing the will, whether before or after the signing or acknowledgment of the will by the testator to the witnesses: In re Johnson's Estate, 57 Cal. 529, where the publication was made immediately after a witness finished subscribing; Jackson v. Jackson, 39 N. Y. 153, where publication was made immediately before the subscription of the will by the testator; In re Look's Will, 5 N. Y. Supp. 50; In re Look, 54 Hun, 635, 7 N. Y. Supp. 298, judgment affirmed, 125 N. Y. 762, 27 N. E. 408, holding that publication must be made at the time of subscription or acknowledgment by the testator; In re Dale's Will, 56 Hun, 169, 9 N. Y. Supp. 396, affirmed without opinion, 134 N. Y. 614, 32 N. E. 649; In re Williams' Will, 2 Conn. Sur. 579, 15 N. Y. Supp. 828, judgment affirmed, 64 Hun, 636, 19 N. Y. Supp. 613, where publication was made immediately before subscription by the testator; In re Carll's Will, 38 Misc. Rep. 471, 77 N. Y. Supp. 1036. It is, however, insufficient to publish the will to one of the witnesses thereto several weeks after the attestation by the witness: In re Dale's Will, 56 Hun, 169, 9 N. Y. Supp. 396, affirmed without opinion, 134 N. Y. 614, 32 N. E. 649.

**Order of Request to Witnesses and Other Requisites.**—The fact that a testatrix requested the witnesses to her will to subscribe as such before she subscribed it does not impair its validity, where they did not actually subscribe until after the testatrix: In re Williams' Will, 2 Conn. Sur. 579, 15 N. Y. Supp. 828, 64 Hun, 636, 19 N. Y. Supp. 613.

**Mode of Attestation.**—''The code provides no special formalities about the witnesses to a will. It is sufficient if they attest and subscribe the will in the presence of the testator'': Huff v. Huff, 41 Ga. 696. The law looks to the substance of the transaction, and requires only evidence that all the safeguards against improvidence

and fraud, prescribed by statute, have been substantially observed: Lewis v. Lewis, 11 N. Y. 220, 13 Barb. 17.

**Mode of Request to Witnesses and Publication.**—It is proper and sufficient for a testator to publish his will and to request the witnesses thereto to attest, in the same sentence, or by the same acts, or in response to one question by one of the witnesses. "These acts are distinct in their nature or quality, but the performance may be joint or connected": Coffin v. Coffin, 23 N. Y. 9, 80 Am. Dec. 235; In re Kane's Will, 20 N. Y. Supp. 123; In re Menge's Will, 13 Misc. Rep. 553, 35 N. Y. Supp. 493; In re Murphy's Will, 15 Misc. Rep. 208, 37 N. Y. Supp. 223.

**The Testimony of the Attesting Witnesses.**—Where a will is regular on its face, its due execution may ordinarily be proved by the uncontroverted testimony of one of the witnesses thereto: Griffith's Exr. v. Griffith, 5 B. Mon. 511; Hight v. Wilson, 1 Dall. 94, 1 L. Ed. 51; Dean v. Heirs of Dean, 27 Vt. 746. In Illinois, however, it is requisite that the testimony of all the witnesses shall be taken to the point that the testator was of sound mind and memory at the time of the execution of the will: Allison v. Allison, 46 Ill. 61, 92 Am. Dec. 237.

**Right to Put in Evidence Outside Testimony of Witnesses.**—Before any evidence other than the testimony of the witnesses to a will may be produced to prove its due execution, all the witnesses must first be examined, or else their absence accounted for and their signatures proved: Tudor v. Tudor, 17 B. Mon. 383, relating to a codicil; In re Moore's Will, 109 App. Div. 762, N. Y. Supp. 729; Alexander v. Beadle, 7 Colo. 126. No controlling force, however, is to be given to the testimony of the witnesses, and it is liable to be rebutted by other evidence, either direct or circumstantial; yet their direct participation in the transaction gives great weight to their testimony: Orser v. Orser, 24 N. Y. 51; Webb v. Dye, 18 W. Va. 376. Thus where the testimony of one or even all of the witnesses to a will is adverse to its valid execution, it may be sustained by other evidence adequate to show its due execution: Griffith's Exr. v. Griffith, 5 B. Mon. 511; Jauncey v. Thorne, 2 Barb. Ch. 40; In re Carll's Will, 38 Misc. Rep. 471, 77 N. Y. Supp. 1036; In re Moore's Will, 109 App. Div. 762, 96 N. Y. Supp. 729; Skinner v. Lewis, 40 Or. 571, 62 Pac. 523, 67 Pac. 951; Hight v. Wilson, 1 Dall. 94, 1 L. Ed. 51; Rose v. Allen, 1 Colo. 23; Alexander v. Beadle, 7 Colo. 126; Simmons v. Leonard, 91 Tenn. 183, 30 Am. St. Rep. 875, 18 S. W. 280; Dean v. Heirs of Dean, 27 Vt. 746; In re Claflin's Will, 73 Vt. 129, 87 Am. St. Rep. 693, 50 Atl. 815; Webb v. Dye, 18 W. Va. 376; In re Meurer's Will, 44 Wis. 392, 28 Am. Rep. 591. So where a witness to a will testifies that his signature thereto is not genuine, and that he knew nothing of its execution, proof of his handwriting is admissible to controvert his testimony: Jones v. Arterburn, 11 Humph. 97. Thus a will may be proved by other witnesses than the sub-

scribing witnesses, notwithstanding one of them gives testimony that the testator was unconscious at the time of attestation: Cheatham v. Hatcher, 30 Gratt. 56, 32 Am. Rep. 650. Likewise where the witnesses to a will disagree as to the material facts in its execution, that fact alone is not enough to defeat the will: In re Bedell's Will, 2 Conn. Sur. 328, 12 N. Y. Supp. 96; In re Meurer's Will, 44 Wis. 392, 28 Am. Rep. 591. And where the witnesses to a will were unable to write, and their hands having been guided by the draftsman of the will while writing their respective signatures, were unable to identify them, and expressed the opinion on hearing the will read that certain of its provisions had been changed since it was read to them at the time of its execution, the testimony of the draftsman of the will is properly admitted to sustain it: Montgomery v. Perkins, 2 Met. (Ky.) 448, 74 Am. Dec. 419. Furthermore, where the witnesses to a will when called as witnesses cannot remember the facts respecting the execution of the will, it may nevertheless be supported by other evidence, including the presumptions of law properly applicable: Hobart v. Hobart, 154 Ill. 610, 45 Am. St. Rep. 151, 39 N. E. 581; In re Hull's Will, 117 Iowa, 738, 89 N. W. 979; Jauncey v. Thorne, 2 Barb. Ch. 40, 59; Orser v. Orser, 24 N. Y. 51; Peck v. Cary, 27 N. Y. 9, 84 Am. Dec. 220, 38 Barb. 77; Rugg v. Rugg, 83 N. Y. 592; In re Kane's Will, 20 N. Y. Supp. 123; Skinner v. Lewis, 40 Or. 571, 62 Pac. 523, 67 Pac. 951.

In Illinois, however, where a petition for probate of a will is first heard in a probate court, the evidence in that court is properly confined to that of the attesting witnesses, but if the probate is there denied and the matter goes to the circuit court, on the hearing in the circuit court the proponent of the will is not limited to nor bound by the testimony of the witnesses to the will, but may rightfully resort to any relevant and competent evidence to sustain the will: Gould v. Chicago Theological Seminary, 189 Ill. 282, 59 N. E. 536; Webster v. Yorty, 194 Ill. 408, 62 N. E. 907; In re Tobin, 196 Ill. 484, 63 N. E. 1021; In re Barry's Will, 219 Ill. 391, 76 N. E. 577.

**Opinion of Witness as Evidence.**—''The opinions of subscribing witnesses as to the condition of the testator's mind, at the time of the execution of the will, may be received in evidence, when the facts are stated on which such opinions are founded, though such witnesses do not fall within the class known to the law as experts. In such cases, however, the evidence on which most reliance should be placed are the facts proved, rather than the opinions expressed by the witnesses'': Cilley v. Cilley, 34 Me. 162. Also Stirling v. Stirling, 64 Md. 138, 21 Atl. 273. In Illinois such opinion must, however, be taken in every case of probate: Allison v. Allison, 46 Ill. 61, 92 Am. Dec. 237. Where a witness to a will expresses an opinion adverse to the testamentary capacity of the testator, that fact is not necessarily fatal to the will, but as the witness prima facie attests the testamentary capacity of the testator by becoming a witness, his adverse testimony will be received with suspicion:

Odenwaelder v. Schorr, 8 Mo. App. 458; Mays v. Mays, 114 Mo. 536, 21 S. W. 921.

**Declarations of Witness as Evidence.**—Where the variant statements of a witness to a will are put in evidence to impeach him, they cannot be used as substantive evidence of the facts stated: Stirling v. Stirling, 64 Md. 138, 21 Atl. 273; In re Moore's Will, 109 App. Div. 762, 96 N. Y. Supp. 729; In re Claflin's Will, 75 Vt. 19, 52 Atl. 1053, 58 L. R. A. 261.

**The Attestation Clause as Evidence.**—Where, on a proceeding wherein the validity of a will is at issue, the witnesses thereto are produced, the attestation clause may be used as a means of refreshing the memories of the attesting witnesses in respect to the formalities actually observed in the execution of the will to which it is attached: In re Look, 54 Hun, 635, 7 N. Y. Supp. 298, affirmed without opinion, 125 N. Y. 762, 27 N. E. 408. Moreover, where there is a dispute as to what occurred at the time of the execution of a will, and the will is on its face in due form, the recitals of the attestation clause must be given some weight in determining the dispute: In re Menge's Will, 13 Misc. Rep. 553, 35 N. Y. Supp. 493.

Where, by reason of the failure of the memories of the subscribing witness to a will, their insanity, death, or absence beyond the reach of process, their testimony cannot be obtained, proof of their signatures subscribed to the attestation clause renders the recitals of that clause prima facie evidence of the observance in the execution of such will of all the formalities set forth in such clause. It is not, however, conclusive evidence of the due execution of the will, but is subject to be rebutted by evidence showing that the actual execution was insufficient: In re Hull's Will, 117 Iowa, 738, 89 N. W. 979; Mundy v. Mundy, 15 N. J. Eq. 290; Tappen v. Davidson, 27 N. J. Eq. 459; Allaire v. Allaire, 37 N. J. L. 312, 39 N. J. L. 113; Mandeville v. Parker, 31 N. J. Eq. 242; Chaffee v. Baptist Missionary Convention, 10 Paige, 85, 40 Am. Dec. 225; In re Kane's Will, 20 N. Y. Supp. 123; In re Jones' Will, 85 N. Y. Supp. 294, holding that this presumption arises even though the will was of recent date; Skinner v. Lewis, 40 Or. 571, 62 Pac. 523, 67 Pac. 951; Appeal of Linton, 104 Pa. 228; In re Claflin's Will, 73 Vt. 129, 87 Am. St. Rep. 639, 50 Atl. 815; In re Meurer's Will, 44 Wis. 392, 28 Am. Rep. 591, holding that want of recollection on the part of the witnesses to a will would not defeat it, especially where there was a complete attestation clause. Because of its effect as evidence, an attestation clause to a will, comprising a statement of all that is necessary to the execution of the instrument as a will, is therefore in the highest degree useful: Allaire v. Allaire, 37 N. J. L. 312, 39 N. J. L. 113. For the purpose of rebutting the presumption thus arising from the attestation clause, oral evidence is admissible: Fleming v. Morrison, 187 Mass. 120, 105 Am. St. Rep. 386, 72 N. E. 499; Pollock v. Glassel, 2 Gratt. 439.

In Pennsylvania it has been held that where it is shown on the probate of a will that one of the witnesses thereto is dead and that his signature to the will is genuine, that proof is equivalent to positive proof by one witness of every fact stated in the attesting clause: Appeal of Linton, 104 Pa. 228. In New York, however, it has been held that it is clear that the attesting clause is not equivalent to the testimony of a living witness, and cannot stand as against the positive testimony of a witness to the contrary. ''If equivalent, it should have equal weight as against conflicting testimony, a force which cannot reasonably be attributed to it. The statute makes it evidence; but it is evidence of a secondary and inferior nature, which is received from the nature of the case'': Orser v. Orser, 24 N. Y. 51; Lewis v. Lewis, 11 N. Y. 220, 13 Barb. 17.

Where a will has no attestation clause, or if the attestation clause does not recite the performance of all the requisites to the making of a valid will, and the testimony of the witnesses to the will cannot be obtained, in some states the burden is on the proponent of the will to show, by the circumstances of the case or other proof if necessary, the observance of all the requisites to the valid execution of a will or of those the performance of which is not recited in the attestation clause, as the case may be: Ela v. Edwards, 16 Gray, 91; Mundy v. Mundy, 15 N. J. Eq. 290; Allaire v. Allaire, 37 N. J. L. 312, 39 N. J. L. 113; Ludlow v. Ludlow, 36 N. J. Eq. 597; In re Breining's Estate, 68 N. J. Eq. 553, 59 Atl. 561; In re Beggans' Will, 68 N. J. Eq. 572, 59 Atl. 874; Chaffee v. Baptist Missionary Convention, 10 Paige, 85, 40 Am. Dec. 225. In other states, however, where a will is regular on its face, the performance of the necessary requisites to its due execution will, in the absence of an attestation clause, be implied from proof of the signatures of the witnesses thereto: Fatheree v. Lawrence, 33 Miss. 585; Nock v. Nock's Exrs., 10 Gratt. 106. See, also, Webb v. Dye, 18 W. Va. 376, 388.